Opinion
 

 SILLS, P. J.
 

 I.
 

 In
 
 In re Marriage of Burgess
 
 (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473], the California Supreme Court recently settled a problem
 
 *136
 
 that had bedeviled the Courts of Appeal for more than a decade—where to allocate the respective burdens in a family law “move away” case. Despite indications in some decisions of the appellate courts to the contrary (e.g.,
 
 In re Marriage of McGinnis (1992)
 
 7 Cal.App.4th 473, 479 [9 Cal.Rptr.2d 182]),
 
 Burgess
 
 squarely held: “. . . the custodial parent seeking to relocate, like the noncustodial parent doing the same, bears no burden of demonstrating that the move is ‘necessary.’ ”
 
 (Burgess, supra,
 
 13 Cal.4th at p. 37.)
 

 In the wake of
 
 Burgess,
 
 it is clear that the basic rules for custody modifications apply just as much to “move away” cases as they do to other cases: After the family law court has determined that a particular custody arrangement is in the best interests of a child, that arrangement should continue “ ‘unless some significant change in circumstances indicates that a different arrangement would be in the child’s best interest.’ ” (13 Cal.4th at p. 38, quoting from
 
 Burchard
 
 v.
 
 Garay
 
 (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237]; accord,
 
 In re Marriage of Carney (1919)
 
 24 Cal.3d 725, 730 [157 Cal.Rptr. 383, 598 P.2d 36, 62 A.L.R.4th 1028].) The fact that the custodial parent is moving away does not mean the family court should examine the custody question anew. Rather, the burden is on the noncustodial parent seeking to change the custody arrangement to show that a different arrangement is warranted under the new circumstances of the move.
 

 The
 
 Burgess
 
 court recognized, however, that a different rule necessarily applies in move-away cases where genuine joint physical custody is the status quo prior to the move. By definition, the existing custody arrangement will be upset by one parent’s move. Accordingly, the family law court must “determine de novo what arrangement for primary custody” would be in the best interest of a child in that situation.
 
 (In re Marriage of Burgess, supra,
 
 13 Cal.4th at p. 40, fn. 12.)
 

 In the wake of that instruction, this court, in
 
 Brody
 
 v.
 
 Kroll
 
 (1996) 45 Cal.App.4th 1732 [53 Cal.Rptr.2d 280], had recent occasion to hold, in a case where the parties had “actual” joint physical custody of the child, that a family law court
 
 should
 
 reconsider the basic custody arrangement when one of the parents moved away from the area.
 

 The present case involves a noncustodial father who argues that his situation fits within the (let us call it)
 
 “Burgess
 
 footnote
 
 12-Brody
 
 exception” to the basic rule against redetermining custody anew in the wake of one parent’s moving away. The basic facts are simple: After Phyllis Whealon lost her job in California as a radar engineer, she found a job in Syracuse, New York. She proposed to relocate with Rian, the infant son of her
 
 *137
 
 marriage to Steven R. Whealon. Steven opposed the relocation, and argued that the family law court should determine custody de novo, rather than placing on him the burden of showing that the changed circumstances warranted a change in custody. The trial court disagreed. Steven now appeals.
 

 Unlike
 
 Brody,
 
 however, the instant case does not involve substantive (i.e., actual) joint physical custody as the status quo before the move away. In
 
 Brody,
 
 the father saw the young child as frequently as four or five days a week. The arrangement was styled by this court as one of “joint physical custody” where “not just a nominal but an actual joint custody arrangement” had been worked out.
 
 (Brody
 
 v.
 
 Kroll, supra,
 
 45 Cal.App.4th at pp. 1736-1737.) By contrast, in the present case the status quo was that the “move away spouse,” Phyllis, had substantive physical custody while the other spouse, Steven, had liberal visitation rights. Accordingly, the trial court did not err in placing on Steven the burden of showing that the changed circumstances of the move required a change of custody.
 

 We therefore affirm the family law court’s postjudgment custody order allowing Phyllis to relocate to Syracuse and still retain primary physical custody of Rian. We also consider a variety of challenges brought by Steven to several child support modification orders made by the family law court. As one of those challenges has merit, we reverse those orders with directions for a recalculation.
 

 II
 

 Steven and Phyllis were married in April 1989; the judgment of dissolution was filed November 8, 1994. Their one child, Rian, was less than three months old at the time of the judgment, having been bom in September 1994.
 

 The judgment provided that Phyllis would “have primary physical custody” of Rian “subject to [Steven’s] right to reasonable visitation” as enumerated. Specifically, Steven was to have “physical custody” of Rian every Wednesday evening from 6 p.m. to the following Thursday morning at 9 a.m., plus on alternate weekends from 6 p.m. Friday to 9 a.m. the following Monday.
 
 [1]
 

 At the time of the judgment Phyllis was employed both full time as a radar engineer at an aerospace firm and part time as an instructor at Cal Poly
 
 *138
 
 Pomona. Finding that the time it took to care for an infant precluded her from working at Cal Poly, Phyllis terminated her employment there. About a year later, in late November 1995, Phyllis received a memo indicating her engineering job in California was to be eliminated and the only job available for her in the firm was in Michigan. Phyllis looked, but was unable to find another job in California within her field, radar engineering. Phyllis’s counsel quickly filed for an order to show cause hearing to obtain an order allowing her to relocate to Michigan with Rian. In December 1995, while the order to show cause was pending, Phyllis agreed to a restraining order providing that neither party would remove Rian from the State of California at any time without the written consent of the other. The parties also agreed to have an expert evaluator appointed to determine the most appropriate custody arrangement for Rian.
 

 The hearing on the order to show cause was originally set for May 9, 1996. On that date, however, Phyllis did not appear, and the court continued the matter to May 23, 1996. In the interim, Steven discovered that Phyllis had gone with Rian to Syracuse, New York. On May 14, 1996, nine days before the continued hearing, Steven made an ex parte application for an immediate change of custody based on Phyllis’s violation of the restraining order. Two days later, on May 16, 1996, that application was granted.
 

 As it turned out, Phyllis’s trip to New York resulted in no loss of visitation time for Steven. Phyllis left on May 9th—a Thursday. The next weekend Steven had no visitation, and Phyllis was back on May 15th, in time for Steven’s regular Wednesday visitation. Pursuant to the ex parte order, Steven had custody of Rian from Wednesday May 15 to the continued date of the hearing, May 23.
 

 Much of the hearing beginning May 23 revolved around the expert evaluator’s report. The evaluator concluded that 19-month old “Rian was very attached to his mother and was quite happy about being with her.” Indeed, despite evident “animosity” on Phyllis’s part toward the evaluator and a “difficulty” in “dealing with” the evaluation process, he still found “she must be considered a good parent to Rian and viewed as the individual who has been the primary parent for the child.” After the hearing, the family law court filed an order which provided that Phyllis would have “primary physical custody” of Rian, with “secondary physical custody” going to Steven.
 

 In net effect, Phyllis had prevailed—she would be able to move away to Syracuse with Rian. The trial court did, however, make a number of orders
 
 *139
 
 ameliorating the negative effects of the move away on Steven’s relationship with Rian. Phyllis was to bring Rian back to California every third weekend of each month, and deliver Rian to Steven no later than 10 a.m. on Saturday; she could pick up Rian no earlier than 5 p.m. Sunday. She would be obligated to furnish Steven with a computerized official itinerary of her arriving and departing flights seven days in advance. In addition, Steven was to have custody of Rian for Christmas and one week thereafter, plus an entire week (beginning with the start of one weekend and ending at the end of the following weekend) in February, May, and August 1997, and, beginning in September 1997 and until Rian commences kindergarten, one such long (nine-day) week every month. Moreover, in September 2000, the parties would undertake mediation to determine a new and appropriate schedule.
 

 In making its orders, the family law court concluded that, under
 
 Burgess,
 
 Phyllis has the “presumptive right to fix” Rian’s residence, and, further, Steven had the “burden of establishing that it would be more detrimental to the child to have the child’s custody with [Phyllis] than with [Steven].” From its move away order Steven has brought this appeal, arguing that the trial court’s application of the
 
 “Burgess
 
 standards” was erroneous and affected its very ability to weigh the expert evaluation. Steven argues that
 
 Burgess
 
 is limited to a “sole custody situation,” not one where, as he contends is the case here, the parties are on “equal footing.” This court has expedited the appeal.
 

 III
 

 The trial court did not err. Steven has simply mischaracterized
 
 Burgess.
 
 In that opinion our Supreme Court took the opportunity to straighten up an area of the law made untidy by the accumulated bulk of a decade’s worth of progressively more contradictory appellate decisions. (See
 
 In re Marriage of Rosson
 
 (1986) 178 Cal.App.3d 1094, 1098-1099 [224 Cal.Rptr. 250] [move
 
 could
 
 constitute persuasive showing of changed circumstances justifying different custody arrangement];
 
 In re Marriage of Fingert
 
 (1990) 221 Cal.App.3d 1575, 1581-1582 [271 Cal.Rptr. 389] [custodial parent had right to move with child absent a bad reason];
 
 In re Marriage of Carlson
 
 (1991) 229 Cal.App.3d 1330, 1336-1338 [280 Cal.Rptr. 840] [trial court did not err under abuse of discretion standard in not allowing mother to relocate to Pennsylvania because, inter alia, father did not have affirmative burden to show move would be detrimental];
 
 In re Marriage of McGinnis
 
 (1992) 7 Cal.App.4th 473, 479 [9 Cal.Rptr.2d 182] [dicta in move-away case where genuine joint physical custody was the status quo that move-away parent had burden of proof to show move was “essential and expedient” and for an
 
 *140
 
 “imperative reason”];
 
 In re Marriage of Roe
 
 (1993) 18 Cal.App.4th 1483, 1489-1490 [23 Cal.Rptr.2d 295] [criticizing and rejecting
 
 McGinnis’
 
 s dicta, but ending discussion with suggestion that burden was on custodial parent to prove move was both necessary and would have no detrimental effect];
 
 In re Marriage of Battenburg
 
 (1994) 28 Cal.App.4th 1338, 1342-1344 [33 Cal.Rptr.2d 871] [where genuine joint physical custody arrangement was in the process of breaking down, move-away parent properly showed that change in
 
 custody
 
 was “expedient-essential-imperative,” but court also indicated that move-away parent had burden to show the
 
 move itself
 
 was expedient-essential-imperative] ;
 
 In re Marriage of Selzer
 
 (1994) 29 Cal.App.4th 637, 644-645 [34 Cal.Rptr.2d 824] [also criticizing
 
 McGinnis
 
 but stating that move-away parent had burden to show necessity and best interests].)
 
 [2]
 

 While
 
 Burgess
 
 arose in the context of an initial custody order, and involved a situation where the proposed move by the custodial spouse was relatively short (a mere 40 miles separates Lancaster from Tehachapi), the high court made it clear that the rules it announced applied just as much to a permanent custody order as it did to an initial one. (See
 
 In re Marriage of Burgess, supra,
 
 13 Cal.4th at pp. 28-29.) Essentially, the Supreme Court held that the trial court was correct in deciding that it was in the best interests of the children if the custodial mother retained sole physical custody even if she moved away to Lancaster. In doing so, the Supreme Court reversed the Court of Appeal, which had held that custody should be transferred to the noncustodial father because the mother had not carried the burden of showing her
 
 move
 
 was necessary.
 
 (Id.
 
 at pp. 32, 34.) The custodial spouse, said the
 
 Burgess
 
 court, does
 
 not
 
 have the burden of showing that the relocation is “essential and expedient,” “for an imperative reason” or even “merely ‘necessary.’ ”
 
 (Burgess, supra,
 
 13 Cal.4th at pp. 38-39, fn. 10 [disapproving
 
 McGinnis, Selzer, Roe,
 
 and
 
 Rosson
 
 to the degree they said otherwise].)
 
 [3]
 

 The
 
 Burgess
 
 court also made it clear that a move away is not enough
 
 by itself
 
 to justify a reexamination of the basic custody arrangement between
 
 *141
 
 two parents.
 
 (In re Marriage of Burgess, supra,
 
 13 Cal.App.4th at p. 38, quoting
 
 Burchard
 
 v.
 
 Garay, supra,
 
 42 Cal.3d at p. 535.) “In a ‘move-away’ case, a change of custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it ‘ “essential or expedient for the welfare of the child that there be a change.” ’ ”
 
 (Burgess, supra,
 
 13 Cal.4th at p. 38, quoting
 
 In re Marriage of Carney, supra,
 
 24 Cal.3d at p. 730.)
 

 Of course, as
 
 Burgess
 
 then pointed out, there are circumstances when a move away
 
 does
 
 justify a change of custody in favor of the non-move-away spouse. Citing
 
 In re Marriage of Rosson, supra,
 
 178 Cal.App.3d 1094, the
 
 Burgess
 
 court noted that a trial court could properly consider, in
 
 refusing
 
 a move away order, the preferences of children aged 10 and 13 for remaining where they already were in a case where both parents had “de facto physical custody of the children"
 
 [4]
 
 and the non-move-away spouse “had assumed substantial parenting responsibilities relating to the children’s academic, athletic, social, and religious activities.”
 
 (In re Marriage of Burgess, supra,
 
 13 Cal.4th at p. 39.) Or, by the same token, a trial court could also “consider the presumption in favor of stability and continuity in the child’s primary custodial relationship” together with a child’s “lack of preference for changing the custody arrangement” in
 
 allowing
 
 a move away.
 
 (Ibid.,
 
 citing
 
 In re Marriage of Selzer, supra,
 
 29 Cal.App.4th at p. 645.)
 

 Even so, the basic structure of placing the initial burden on the parent seeking a change of custody, not a change of location, remains. (See
 
 In re Marriage of Burgess, supra,
 
 13 Cal.4th at p. 38, quoting
 
 In re Marriage of Carney, supra,
 
 24 Cal.3d at p. 730.) Such an initial burden is not only consistent “with the presumptive ‘right,’ ” expressed in Family Code section 7501, of a custodial parent to change residence unless the change prejudices the rights or welfare of the minor children (see
 
 Burgess, supra,
 
 13 Cal.4th at p. 38), but also accords with the reality of “an increasingly mobile society.”
 
 (Id.
 
 at p. 35.)
 

 We have explored the
 
 Burgess
 
 decision at some length to demonstrate the importance, in the wake of that decision, of the nature of the custody relationship before the proposed move away. Given the importance of stability and continuity in children’s lives, a burden rests on the party
 
 *142
 
 seeking to change custody. However, the
 
 Burgess
 
 court observed, in a footnote now relied on by Steven, that there “may be” a “different analysis” where “parents
 
 share
 
 joint physical custody of the minor children.”
 
 (In re Marriage of Burgess, supra,
 
 13 Cal.4th at p. 40, fn. 12.) In such a case, the usual presumption against “ ‘reexamin[ing]’ ” the basic custody arrangement
 
 (id.
 
 at p. 38) does not apply, and the “trial court must determine de novo what arrangement
 
 for primary custody
 
 is in the best interests of the minor children.”
 
 (Id.
 
 at p. 40, fn. 12, italics added.)
 

 As we have already mentioned, the “different analysis” mentioned by
 
 Burgess
 
 arises out of the disruption of the status quo which necessarily inheres in a move-away case where there is genuine joint physical custody since, in such an instance, it is unavoidable that the existing custody arrangement will be disrupted. One parent or the other must be given primary physical custody. Accordingly, a “de novo” determination—in effect, a “reexamination” of the basic custody arrangement—makes sense. (See, e.g.,
 
 Brody
 
 v.
 
 Kroll, supra,
 
 45 Cal.App.4th at p. 1737 [where parties had “actual joint custody arrangement” trial court should have determined whether it was in child’s best interest to give move-away parent “virtual sole custody and allow her to take the child” with her].)
 

 Steven’s attempt to fit himself into the genuine (or “de facto”) joint physical custody exception fails. This is not a case of a child who shuttles back and forth between two parents. (E.g.,
 
 In re Marriage of Battenburg, supra,
 
 28 Cal.App.4th at p. 1342 [mother had child Sunday evening through Thursday evening, father had child Thursday evening through Sunday evening].) Rather, it is a case where one parent had, in substance, primary physical custody of the child and the other generous visitation rights. (E.g.,
 
 In re Marriage of Selzer, supra,
 
 29 Cal.App.4th at p. 639 [mother had primary physical custody, father had visitation on alternating weekends, alternating Tuesday and Thursday evenings, and additional periods agreeable to the parties].)
 

 Here, there is no question that, generous as Steven’s visitation rights were, prior to the move Rian spent the vast majority of his time with Phyllis. Accordingly, the trial court did not err in applying the basic standard articulated by
 
 Burgess
 
 (the parent seeking the change has the burden of showing the change is in the child’s best interests) and not the exception for cases of genuine joint physical custody.
 

 Two remaining issues need be considered. Steven argues this case fits the bad faith exception to
 
 Burgess.
 
 (See
 
 In re Marriage of Burgess, supra,
 
 13
 
 *143
 
 Cal.4th at p. 36, fn. 6 [“An obvious exception is a custodial parent’s decision to relocate simply to frustrate the noncustodial parent’s contact with the minor children.”].) Steven points to bits and pieces of evidence which, he says, show that Phyllis is inclined to frustrate his relationship with Rian. The bad faith argument, however, was squarely rejected by the family law court, which found that Phyllis “has avoided allowing her feelings [of hostility toward Steven] to negatively affect the minor’s relationship with [his father].” Steven’s argument to the contrary makes the classic mistake of only looking at the evidence favorable to the appellant and ignoring the evidence favorable to the judgment (and respondent).
 

 Steven also argues that, because of the temporary change of custody pursuant to Steven’s ex parte application, Steven was the custodial parent going into the move away—in effect, that this one-week period conferred on him the advantage, under
 
 Burgess,
 
 of the custodial status quo. This point is equally without merit, because it ignores the
 
 substance
 
 of the custodial relationship for the great majority of the time just before the move away. There is no question that Phyllis had primary physical custody of Rian and was his primary caretaker for that period. The one-week interregnum in which Steven had custody pursuant to a temporary ex parte order is so self-evidently short that it cannot realistically be described as the custodial arrangement prior to the move.
 

 IV
 

 In the wake of the vicissitudes of Phyllis’s employment, she brought an order to show cause (OSC) to obtain an upward modification of child support. This OSC was heard at the same time as the OSC on the move away issue, and resulted in separate modification orders for three different periods:
 

 (1) May 15, 1995 through March 14, 1996, $500 per month, plus one-half child care expenses of $269.
 

 (2) March 15, 1996 through May 15, 1996, $950 per month, but with no child care costs.
 

 (3) After June 1,1996, $611 per month, plus one-half of any actual child care incurred, not to exceed $200 per month.
 

 Steven presents a series of four challenges to these orders. First, he claims that the trial court erred in using only his last month’s gross income,
 
 *144
 
 $6,062, in determining his income for DissoMaster purposes, instead of using the average over the last 12 months, $5,680. This point fails because Steven did not raise it at the time the trial court found his income to be $6,062.
 

 For better or worse, California child support law now resembles determinate sentencing in the criminal law: The actual calculation required of the trial judge has been made been so complicated (see generally, Fam. Code, § 4055) that, to conserve judicial resources, any errors must be brought to the trial court’s attention at the trial level while the error can still be expeditiously corrected. (See generally,
 
 People
 
 v.
 
 Scott
 
 (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040] [“Routine defects in the court’s statement of reasons are easily prevented and corrected if called to the court’s attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them.”].) Here, while Steven brought a motion for reconsideration on the move away issue, he failed to mention that his income had been overstated.
 

 Steven’s second point has merit. The court ran the computation for the period May 15, 1995, through May 14, 1996 (encompassing periods (1) and (2) above) with a 20 percent time-share factor, when the correct figure was 28 percent. This error
 
 was
 
 brought to the trial court’s attention, but the trial court was (understandably) reluctant to rerun the computation: “I hope I don’t have to rerun these dang things.” The court then
 
 estimated
 
 what the DissoMaster would have yielded with the correct figure.
 

 Again, for better or worse, California child support law has become highly deterministic. Certain sections of the Family Code are now redolent of the flavor of the Internal Revenue Code, complete with definitions of income and allowances for deductions. (See Fam. Code, § 4055.) In light of such determinism, ascertaining the correct “uniform guideline” becomes extraordinarily important, because the trial court may only depart from that guideline by specifying (either in writing or on the record) three things—the guideline amount, the reason why the amount ordered differs, and the reason the different amount is consistent with the best interests of the child. (Fam. Code, § 4056.) Obviously that means, at a minimum, a correct calculation of the guideline amount.
 

 Consistent with Family Code sections 4055 and 4056, deviations cannot be justified simply by making an estimate. We have not been cited to any authority which allows discrepancies to be swept under the carpet by virtue
 
 *145
 
 of, as Phyllis invites us to do, some discretionary fudge factor. If the trial court is going to use its discretion to vary the guideline amount, it must make an accurate computation of that amount, then actually use its discretion and state reasons for the variance on the record, not just “estimate” the guideline amount in a context where it evidently does
 
 not
 
 intend to vary the guideline.
 

 That said, we have great sympathy for the trial judge. We recognize that we are spared the tedium of running the DissoMaster ourselves. Still, the “dang things” must be redone, this time with the accurate time-share figure of 28 percent.
 
 [5]
 

 Steven’s third point is that, for the period June 1, 1996, forward, the trial court incorporated only a one-half hardship deduction for the child of his recent marriage, when it should have awarded him a full deduction. (See Fam. Code, § 4071, subd. (b) [allowing a maximum hardship deduction of the amount of the order].) The answer here is that hardship deductions are discretionary (see Fam. Code, § 4070 [“the court may allow . . .”]), and it is perfectly reasonable to take into account the fact that a new spouse may be earning income in determining the hardship deduction for the expenses of a child of that spouse.
 

 Steven’s final argument is that Phyllis should not be, in effect, given credit for the time Rian spends in day care, for which he pays half. While this argument is not without a certain good-for-the-gander-good-for-the-goose attractiveness, it ultimately founders on the practical reality of day-today responsibility for a child. It is the custodial spouse who, after all, has the burden of finding, arranging and fronting the money for appropriate day care, who must deliver and pick up the child, and whose work day will be interrupted if there are any medical or other emergencies.
 

 The child support orders were thus correct in all respects except for the need to use a 28 percent, instead of 20 percent, time-share factor. We reverse those orders with directions for the trial court to redo the calculation using a 28 percent factor and enter the appropriate orders.
 

 V
 

 The move-away order appealed from is affirmed. For reasons stated in part IV of this opinion, the child support modification order for the period
 
 *146
 
 May 15, 1995, through May 14, 1996, is reversed, with directions to recalculate the order using the correct time-share factor. In the interests of justice each party will bear his or her own costs on appeal.
 

 Wallin, J., and Crosby, J., concurred.
 

 A petition for a rehearing was denied March 18, 1997.
 

 [1]
 

 Further, on alternate years, Steven would have physical custody Thanksgiving and the Friday afterwards, Christmas Eve from 6 p.m. on December 23d to 8 p.m. on December 24th, Christmas vacation from 9 a.m. on December 29th to 9 a.m. on January 2d, Easter from 6 p.m. on Good Friday through 9 a.m. on the following Monday, and on Rian’s birthday. Steven
 
 *138
 
 also had physical custody of Rian every year on Father’s day, from 9 a.m. through the same time the following Monday, and on his own birthday, from September 17th 9 a.m. through 9 a.m. the next day.
 

 [2]
 

 Much of the contradictory nature of the appellate jurisprudence may be traced to a tendency on the part of some panels of the Court of Appeal to transmute the requirement, set out in
 
 In re Marriage of Carney, supra,
 
 24 Cal.3d 725 for changed circumstances justifying a
 
 change of custody,
 
 into a requirement for changed circumstances justifying a change of
 
 location.
 
 (Compare
 
 In re Marriage of McGinnis, supra,
 
 7 Cal.App.4th at page 479 and
 
 In re Marriage of Battenburg, supra,
 
 28 Cal.App.4th at page 1342, with
 
 In re Marriage of Burgess, supra,
 
 13 Cal.4th at page 38.)
 

 [3]
 

 The court might also have added
 
 In re Marriage of Battenburg, supra,
 
 28 Cal.App.4th 1338, 1342: “We reject father’s contention that mother did not meet her burden of showing that the move to the State of Washington was expedient, essential, and imperative. In allowing the move, the trial court impliedly determined that the move was ‘expedient,’ ‘essential,’ and ‘imperative.’ ” Clearly any rule placing a burden on a parent to show that a
 
 move,
 
 as distinct from a
 
 change of custody,
 
 is expedient-essential-imperative is contrary to
 
 In re Marriage of Burgess, supra,
 
 13 Cal.4th at page 38: “The dispositive issue is, accordingly,
 
 *141
 

 not
 
 whether relocating is itself ‘essential or expedient’ either for the welfare of the custodial parent or the child, but whether a
 
 change of custody
 
 is ‘ “essential or expedient for the welfare of the child.” ’ ” (Quoting
 
 In re Marriage of Carney, supra,
 
 24 Cal.3d at p. 730,
 
 Burgess’s
 
 court’s italics.)
 

 [4]
 

 In this opinion we have used the phrases “genuine joint physical custody” or “substantive joint physical custody” to mean the same thing.
 

 [5]
 

 If the parties are wise, they will determine the amounts themselves and enter a stipulation to the correct figures, saving themselves the expense of a hearing.