[No. E019640. Fourth Dist., Div. Two. July 21, 1998.]

In re the Marriage of HILARY and MARK LEE BIALLAS.
HILARY GILMORE, Appellant, v.
MARK LEE BIALLAS, Respondent.

**COUNSEL**

Pitre & Teunisse and Patricia A. Teunisse for Appellant.

Tuckerman & Thompson and Byron C. Thompson for Respondent.

**OPINION**

**GAUT, J.—**

### 1. *Introduction*

Appellant Hilary Gilmore, formerly Hilary Biallas (Mother), appeals from a postjudgment order transferring physical custody of a minor child from her to respondent Mark Lee Biallas (Father). We hold that the trial court incorrectly made a de novo determination on the issue of custody, and therefore the order must be reversed and the case remanded for a determination as to whether changed circumstances show that the best interests of the child would be served by a change in custody from Mother to Father.

### 2. *Facts*

Mother and Father were married in 1988 and separated on September 15, 1990. Their only child, a son, was born on April 13, 1990. The judgment of dissolution awarded joint legal custody of the son to the parents. The judgment also awarded "primary physical custody" of the son to Mother and gave Father reasonable visitation periods, including from Sunday morning to Monday morning and from Wednesday evening until Thursday morning.

As the son grew older, the amount of visitation by Father increased. Ultimately, Father usually exercised visitation every Thursday evening until Friday morning and every other weekend from Friday evening until Monday morning. Between September 1995 and April 1996, Father also sometimes saw his son for about an hour or so in the early evenings when the child stayed with his paternal grandmother after getting out of school.

In the early part of 1996, Mother became pregnant by a man who lives and works in Nebraska. They were married in August 1996.

On April 15, 1996, the California Supreme Court issued its decision in *In re Marriage of Burgess* (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473]. Mother then told Father that she might have to move to Nebraska or San Diego and, if she did so, she wanted the son to move with her. On June 22, 1996, Mother announced to Father by certified letter her intention of moving to Nebraska. The letter proposed discussing a new visitation schedule.

Mother left for Nebraska on August 12, 1996, taking the son with her. In response to an application by Father for an order to show cause hearing, the court made a temporary order transferring custody to Father.

After some complicated procedural maneuverings, the court ultimately conducted an evidentiary hearing on the issue of custody on September 3 and 4, 1996. The court issued a statement of decision and a permanent order transferring custody to Father. The court also denied a motion for stay and a motion for reconsideration brought by Mother.

The son has lived in California since September 1996.

### 3.  *Discussion*

On appeal, the parties disagree regarding whether the trial court correctly applied the law in granting custody to Father when Mother sought to move to Nebraska.

In *Burgess*, the California Supreme Court squarely held: ". . . the custodial parent seeking to relocate, like the noncustodial parent doing the same, bears no burden of demonstrating that the move is 'necessary.' " (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 37.) Instead, the noncustodial parent seeking a custody change must prove that, due to a substantial change in circumstances, it would be in the best interest of the child to change the custody order. (*Id.* at pp. 37-38.)

The *Burgess* court made its ruling based on an initial order for temporary custody but announced that the same rule would apply "as in any other proceeding to alter existing custody arrangements . . . ." (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 37.) In a footnote, it also stated: "A different analysis may be required when parents *share* joint physical custody of the minor [child] under an existing order and in fact, and one parent seeks to relocate with the minor [child]. In such cases, the custody order 'may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interest of the child requires modification or termination of the order.' (Fam. Code, § 3087.) The trial court must determine de novo what arrangement for primary custody is in the best interest of the minor [child]." (*Burgess, supra,* at p. 40, fn. 12.)

In subsequent opinions, the appellate courts have held that whether the trial court makes a de novo determination on the issue of custody depends on whether the parent seeking to relocate has sole or joint physical custody. (*Brody* v. *Kroll* (1996) 45 Cal.App.4th 1732, 1736-1737 [53 Cal.Rptr.2d 280]; *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 142 [61 Cal.Rptr.2d 559]; *Ruisi* v. *Thieriot* (1997) 53 Cal.App.4th 1197, 1203-1205 [62 Cal.Rptr.2d 766].) These cases also recognize that the term "primary physical custody" has no legal meaning. Instead, the trial court looks at the

existing de facto arrangement between the parties to decide whether physical custody is truly joint or whether one parent has sole physical custody with visitation rights accorded the other parent. For example, in *Whealon*, like here, the father kept the child for one overnight every week and, on alternate long weekends, from Friday evening until Monday morning. The appellate court characterized this arrangement not as joint physical custody but as an arrangement in which the mother had physical custody and the father had generous visitation rights. (*Whealon, supra,* at pp. 137, 142.)

At numerous places in the record, the trial judge expressed his opinion that these parents had "shared" or joint physical custody.  ■  We recognize that the "standard of appellate review of custody and visitation orders is the deferential abuse of discretion test." (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 32.) Nevertheless, when the trial court orders a change in an existing custody arrangement, an appellate court is "less reluctant to find an abuse of discretion." (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 731 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028].)  ■  In the present case, the trial court's finding with respect to the issue of joint physical custody appears to be contrary to law.

Joint physical custody exists where the child spends significant time with both parents. (Fam. Code, § 3004.) For example, in *Brody* v. *Kroll, supra,* 45 Cal.App.4th 1732, the father saw the child four or five times a week. In both *In re Marriage of McGinnis* (1992) 7 Cal.App.4th 473, 475 [9 Cal.Rptr.2d 182] and *In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1342 [33 Cal.Rptr.2d 871], the children spent four days a week with one parent and three days with the other. But the division of physical custody in this case was more like that in *In re Marriage of Whealon, supra,* 53 Cal.App.4th 132 and in *In re Selzer* (1994) 29 Cal.App.4th 637, 639 [34 Cal.Rptr.2d 824], cases in which the fathers had alternate weekends and one weeknight every week, as well as other periods agreeable to the parties. In the latter instances, the courts have held that custody was not joint custody. Therefore, we reject the trial court's finding that the parents here had joint physical custody. Instead, we hold that Mother had what was effectively sole physical custody, and Father had liberal visitation rights.

Under these circumstances, the next question is whether the lower court properly made a de novo determination on the issue of custody. This is not a case involving genuine joint physical custody, in which ". . . it is unavoidable that the existing custody arrangement will be disrupted." (*In re Marriage of Whealon, supra,* 53 Cal.App.4th at p. 142.) Therefore, the lower court should not have made a de novo determination based on that reason. ·

We also reject Father's argument that a de novo determination was appropriate because the previous custody order was entered pursuant to a

stipulation between the parents. For this argument, Father relies on *Burchard v. Garay* (1986) 42 Cal.3d 531, 534 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237]. *Burchard*, however, did not involve a judicial custody order based on a stipulation. In that case, there had never been any agreement or order for custody. Because there had never been a prior judicial custody determination, the appellate court said that the trial court should have considered the best interests of the child rather than employing the rule of changed circumstances to decide custody.

Furthermore, as recognized in *Burgess*, the *Burchard* case did not question the legitimacy of judicial orders entered pursuant to parental agreement. *Burgess* analyzes *Burchard* as follows, focusing on the nature of the existing custody arrangement:

"Ordinarily, *after a judicial custody determination*, the noncustodial parent seeking to alter the order for legal and physical custody can do so only on a showing that there has been a substantial change of circumstances so affecting the minor child that modification is essential to the child's welfare. [Citation.] As we have explained: 'The [changed circumstance] rule requires that one identify *a prior custody decision based upon circumstances then existing* which rendered that decision in the best interest of the child. The court can then inquire whether alleged new circumstances represent a significant change from preexisting circumstances, requiring reevaluation of the child's custody.' [Citation.]

"We conclude that the same allocation of the burden of persuasion applies in the case of a custodial parent's relocation as in *any other proceeding to alter existing custody arrangements*: '[I]n view of the child's interest in stable custodial and emotional ties, *custody lawfully acquired and maintained for a significant period* will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change [in custody] is in the child's best interests.' [Citation.]" (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 37, italics added.)

As we read *Burgess* and *Burchard*, they simply state that an existing custody order, however it may have originated, reflects the best interests of the child until it is shown otherwise by changed circumstances. It does not matter that the custody order was entered pursuant to a stipulation: ". . . regardless of how custody was originally decided upon, after the child has lived in one parent's home for a significant period it surely remains 'undesirable' to uproot him from his 'established mode of living,' and a substantial change in his circumstances should ordinarily be required to justify that result." (*In re Marriage of Carney, supra,* 24 Cal.3d at p. 731, fn. 4.) And it

does not mean that, simply because the parents originally stipulated to a custody order, the trial court should later be empowered to make a de novo determination. To adopt such a holding would surely discourage parents from making amicable agreements about their child's welfare.

For the foregoing reasons we conclude that the trial court erred when it found that the parents shared joint physical custody and compounded that error by making a de novo determination on the issue of custody. Instead, the lower court should have decided whether the party seeking a change of custody, Father, had met his burden to show the existence of a significant change in circumstances that would make a change of custody in the child's best interest. (*In re Marriage of Burgess, supra,* 13 Cal.4th at pp. 37-38; *In re Marriage of Whealon, supra,* 53 Cal.App.4th at p. 142.)

On this issue, Mother argues that Father failed to allege or demonstrate any changed circumstances. In opposition, Father maintains that, if the trial court had applied the changed-circumstances rule, it would have reached the same result. He argues that an out-of-state move by definition constitutes sufficient changed circumstances to justify a change in custody.

Father is wrong. ■ *Burgess* cautioned that, in a case where the custodial parent seeks to relocate, ". . . the trial court must take into account the presumptive right of a custodial parent to change the residence of minor children, so long as the removal would not be prejudicial to their rights or welfare." (*In re Marriage of Burgess, supra,* 13 Cal.4th at p. 32; Fam. Code, § 7501.) Moving out of state or even out of the country is not necessarily prejudicial to a child. (See *In re Marriage of Condon* (1998) 62 Cal.App.4th 533 [73 Cal.Rptr.2d 33] [mother's relocation to Australia in children's best interests.]) Additionally, in a case involving an existing custody arrangement, the court should preserve the established mode of custody in the absence of a substantial showing that renders it essential or expedient to grant a change of custody: "[T]he paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining ongoing custody arrangements." (*In re Marriage of Burgess, supra,* 13 Cal.4th at pp. 32-33.)

■ In the present case, the trial court's statement of decision demonstrates that the court did not employ the proper analysis. Because the court incorrectly characterized the physical custody arrangement as "shared," it did not consider the presumptive right of Mother to change the child's residence. Furthermore, the trial court incorrectly placed the burden of persuasion on Mother, "the party moving away from a shared parenting

situation[,] to show that the move is in the best interest of the child." Finally, in evaluating the interests of the child, the court did not find that the move would be prejudicial to the child or that it would be essential or expedient to grant a change of custody. Instead, the court criticized Mother's involvement with her second husband and her decision to live with him and their new baby in Nebraska. But the court did not identify any specific detriment to the child other than the effect a move would have on his visitation with his father and his relationship with his paternal grandmother.

As to the latter, the public policy in favor of visitation that provides "frequent and continuing contact with both parents" (Fam. Code, § 3020, subd. (b)) may be served in a variety of ways. As *Burgess* observed, "frequent and continuous" is not defined and the code does not specify any particular form of contact. (*In re Marriage of Burgess, supra,* 13 Cal.4th at pp. 34-35.) The negative effects of a move away from a noncustodial parent can be ameliorated by a number of means, e.g., increasing the amount of visitation during school vacations and allocating transportation expenses to the custodial parent. (*Id.* at p. 40.)    No showing was made by Father that these were not feasible alternatives.

Rather than focusing on the relevant issues of prejudice and whether a custody change would be essential or expedient, the statement of decision reflects the court's antipathy toward Mother, described as "a scheming and plotting individual who justifies her decisions by reliance on counsel and feigned ignorance." The court was apparently reacting to the following sequence of events.

After the *Burgess* decision was issued on April 15, 1996, Mother announced that she might have to move to San Diego or Nebraska, depending on where the man she planned to marry could find a job. She also decided that the son should attend a day-care facility rather than going after school to the house of his paternal grandmother as he had been doing since September 1995. On June 22, mother gave 45 days' written notice to Father of the intended move to Nebraska on August 6. On July 30, Father personally served Mother with an application for a hearing on an order to show cause for modification of custody, visitation, and support for an initial hearing date of Tuesday, August 13. The application did not afford Mother the required statutory 15-days' notice. Mother remained in town until Monday, August 12, to allow the son to have visitation with his Father over the weekend. On August 12, Mother left for Nebraska, via her parents' residence in New Mexico. At the hearing on August 13, which Mother did not attend, the court awarded Father temporary physical custody. Mother then proceeded from New Mexico to Nebraska with the son. On August 23, while the son

was in flight to California, Mother learned that this court had granted a stay of the temporary custody order. In Phoenix, the child boarded a different plane and returned to Nebraska. In September, the child was returned to California.

We agree with the trial court that the unfortunate events of August and September 1996 probably confused and distressed the child. Nevertheless, we do not agree that the circumstances arising out of Mother's move to Nebraska demonstrated significant prejudice to the child making it essential or expedient to grant custody to Father. In other move-away cases, parents have made unauthorized moves of the children without being deprived of custody. (See *In re Marriage of Whealon, supra*, 53 Cal.App.4th at p. 138 and *In re Marriage of Condon, supra*, 62 Cal.App.4th at p. 553.) Even if the trial court had applied the test of changed circumstances, absent a stronger showing, the custody change constituted an abuse of discretion by denying the child the benefits of a stable home. (*In re Marriage of Burgess, supra*, 13 Cal.4th at p. 37; *In re Marriage of Carney, supra*, 24 Cal.3d at p. 731.)

In reversing the custody order to Father, we recognize that nearly two years have passed since custody of the child was given to Father. During that time, additional circumstances bearing on the child's best interests may have developed. Therefore, our decision does not finally determine the custody of the child. We leave that decision to the trial court. (*Burchard v. Garay, supra*, 42 Cal.3d at p. 541, citing *In re Marriage of Carney, supra*, 24 Cal.3d at p. 741; *Speelman v. Superior Court* (1983) 152 Cal.App.3d 124, 133 [199 Cal.Rptr. 784].)

### 4. *Disposition*

We reverse the postjudgment order of the trial court granting custody of the minor child to Father and remand to the trial court in accordance with our opinion.

Hollenhorst, Acting P. J., and McKinster, J., concurred.