Filed 4/3/25  Richardson v. Keogh CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| BRANDON RICHARDSON, | D083801 |
| Respondent, | |
| v. | (Super. Ct. No. 22FL011946C) |
| VALERIE KEOGH, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Terrie E. Roberts, Judge.  Reversed and remanded with instructions.

Gibson, Dunn & Crutcher, Mudit Buch, Michael Holecek, Ryan Azad, and Summer Wall; Family Violence Appellate Project, Jodi Lewis and Jennafer D. Wagner for Appellant.

No appearance for Respondent.

Appellant Valerie Keogh appeals a custody and visitation order.[1] Regarding that order, she contends that the trial court erred by awarding Richardson de facto joint custody without finding that he overcame the Family Code[2] section 3044 presumption despite finding that he committed domestic violence. We agree that the parenting plan, which consisted of Richardson having approximately 25 percent of monthly parenting time plus four consecutive weeks in the summer, amounted to de facto joint custody. We conclude the trial court erred by issuing the custody and parenting plan without considering whether Richardson overcame section 3044's "rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (§ 3044, subd. (a).)

Thus, we reverse the custody and visitation order for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Keogh and Richardson had a seven-year romantic relationship and share two young children.

On August 1, 2022, Keogh filed for a domestic violence restraining order (DVRO) against Richardson on behalf of herself and their children. She also sought sole legal and physical custody of the children. In Keogh's supporting declaration, she stated that Richardson had an alcohol problem and became angry when intoxicated, resulting in acts of emotional and physical abuse against her, often in front of the children. Such incidents

---

[1] Keogh also originally contested a sanctions order the trial court made against her. Keogh later informed this court she "no longer appeals the trial court's monetary award of $4,500 in favor of Respondent Brandon Richardson." Therefore, we will not address that issue.

[2] Undesignated statutory references are to the Family Code.

included Richardson holding a gun to her head, striking her, choking her, and telling her he hopes she dies. On at least one such occasion, he was arrested. According to Keogh, once after drinking alcohol, Richardson drove a vehicle containing their kids. Based on these allegations, the court granted a temporary restraining order (TRO) in favor of Keogh and against Richardson. While the TRO was in effect, the court ordered custody of the children to Keogh with no visitation for Richardson.

Several months later, in October 2022, Richardson filed an action to determine his parental relationship to the children. The trial court consolidated Richardson's motion with the domestic violence restraining order case.

On December 19, 2022, the parties stipulated to, and the court ordered, an extension of the TRO until June 6, 2023. Keogh intended to dismiss the request for DVRO if Richardson did not violate the TRO during that time. Indeed, Keogh dismissed the TRO in June 2023.

On June 5, 2023, the court issued a judgment that: (1) found Richardson to be the father of the children based on a stipulation by the parties,[3] and (2) established a child custody and visitation plan based on a March 2023 hearing. The plan provided for joint legal custody for Keogh and Richardson. As to physical custody, the plan provided for primary residence of the children with Keogh. Richardson's parenting time would depend on whether the parents remained residing in the "same community" or resided in "different communities" because Keogh chose to relocate with the children. Based on the parties' stipulation, the court's order permitted Keogh to relocate to Colorado with notice to Richardson.

---

[3] On May 18, 2023, Richardson signed a Voluntary Declaration of Parentage.

Both the same-community plan and different-community plan involved multiple steps, each providing additional parenting time to Richardson for every two months he did not test positive for alcohol. Under the final step of the same-community plan, Richardson would "parent the children Tuesdays from 3:30pm to Wednesdays at 8:00am, Thursdays from 3:30pm to Fridays at 8:00am and every other weekend from Friday at 8:00am to Sunday at 7:00pm." The final step of the different-community plan provided that Richardson "shall parent the children two weekends a month in their community from Friday at school dismissal or 3:00pm to Sunday at 6:00pm" and for four weeks during summer break. Richardson and Keogh would share other school breaks, special days, and holidays.

In June 2023, Keogh moved to Colorado with the children without providing notice to Richardson. She sought a restraining order against Richardson there, which a Colorado court later denied based on California being the proper jurisdiction. The Colorado court sanctioned Keogh for conduct related to that hearing.

On July 21, 2023, Keogh filed a new request for a DVRO in California on behalf of herself and the children. In the new DVRO application Keogh sought sole legal and physical custody. Keogh's DVRO declaration recounted the history contained in the prior DVRO request and more recent events. The court granted a TRO as to Keogh, but not the children. As to custody and visitation, the court retained the parenting plan from the June 5, 2023 judgment pending a hearing on the DVRO.

Meanwhile, on August 17, 2023, Richardson moved for a change in custody and visitation. On August 24, 2023, the court reserved ruling on Richardson's motion until after the upcoming domestic violence hearing.

The court held an evidentiary hearing on the request for DVRO on August 8, September 11, and October 17, 2023. At the hearing, Keogh testified as to the events leading up to her filing this restraining order. According to Keogh, on May 16, 2023, immediately after Richardson dropped the children off, her son told her that Richardson said he had a gun and wanted to kill her and the children.[4] Keogh took videos of her son's statements, which the court viewed at the hearing. Despite that threat, Keogh explained that out of fear she dismissed the prior restraining order request on June 6, 2023.

Subsequently, on June 14 and June 16 or 18, 2023, a man who identified himself as a private investigator sat in his car outside Keogh's house all day and followed her on an outing. She was terrified because she believed Richardson sent the man.

On June 16, 2023, Richardson sent several messages to Keogh, causing additional fear. He wrote: "I can't explain how bad a person you are. I can't wait for our kids to grow and understand the person you are. You'll regret everything you've done, hurting our kids, I can't wait until they're old enough to understand"; "You are a bad person, you'll have to answer for everything one day"; and, "You are an evil person. Good luck. Coparenting will be tough. You deserve bad karma." Subsequently, on June 19, 2023, according to her testimony, she took the children on vacation to Colorado, where her parents lived, and remained there rather than returning to California.

---

[4]     Keogh called the police. The investigating detective did not send the case to the City Attorney because Keogh declined to permit her son, who was six years old, to be forensically interviewed regarding the incident. In videos taken by Keogh of the child relating the accusation, the detective believed the child may have been coached.

Keogh also testified regarding events prior to the first restraining order application. She stated that in 2022, Richardson, while drunk, drove the children in his car. In addition, she recounted incidents involving Richardson choking her, pushing her, and squeezing her, causing bruises. One such incident occurred while the two vacationed in Mexico in 2019. Keogh stated she feared Richardson for at least six years.

Keogh's father testified that she called him in a shaken and panicky state after being attacked by Richardson in Mexico where the couple were vacationing; he saw the resulting injuries to her arm and back when she returned. Keogh's sister testified that in 2019, while on a video call, she saw Richardson pull Keogh's arm, slam it in a glass door, and slam her head against the glass. Keogh had red marks on her forehead and arm from the incident.

Counsels' closing arguments did not address custody. Richardson's counsel stated it made sense to address custody following the court's restraining order ruling.

At the conclusion of the hearing, the court found that Richardson committed domestic violence against Keogh in April 2019 during the vacation in Mexico and in October 2019 involving the sliding glass door. Given that background, the court found that Richardson's messages on June 16, 2023, were threatening to Keogh.

However, the court also concluded that Keogh lacked credibility in "many respects" including: Keogh's testimony regarding the private investigator; the allegations regarding the May 16, 2023, incident; and Keogh's explanation that she left for Colorado for a vacation and later decided to stay. As to the May 16 incident, the court concluded Keogh improperly prompted her son during a conversation with her and while Child

6

Welfare Services interviewed the child. The court also questioned why Keogh would dismiss the temporary restraining order within weeks of Richardson allegedly threatening to kill her and the children. The court further noted that Keogh misrepresented the California proceedings to a Colorado court.

Based on those findings, on October 17, 2023, the court issued a DVRO against Richardson protecting Keogh only, expiring June 21, 2024. The court stated, "There is now a 3044 presumption against [Richardson] since I made a finding of domestic violence, that it is detrimental for you to have legal custody of your children, and for you to have joint, physical custody of your children."[5] The court awarded full legal custody to Keogh but otherwise maintained the existing custody and visitation order, except Richardson would receive longer weekends under the final step of the different-communities plan. At the time of the hearing, Richardson was already in the final phase of the different-community plan, exercising the maximum amount of parenting time then ordered.

As amended on October 18, 2023, the child-sharing plan[6] attached to the DVRO awarded legal custody to Keogh. The order retained the same parenting schedule for the same-community plan. The court changed the

---

[5] The trial judge avoided making any findings about Richardson rebutting the section 3044 presumption because she first wanted him to complete a 26-week domestic violence class: "I'm ordering you to complete the 26-week batterer's program, and that will be a factor *that the next judge* you have can look at in determining whether you have overcome the 3044 presumption." (Italics added.)

[6] The October 17, 2023, order attached the same parenting plan as was attached to the June 5, 2023, judgment, including several handwritten edits. The plan attached to the amended October 18, 2023, order included those edits and others. For example, the amended plan awarded sole legal custody of the children to Keogh and required Richardson to continue testing for alcohol as a condition for his parenting time, though the prior plan did not.

7

final step of the different-community plan to provide Richardson parenting time "from Thursday at school dismissal or 3:00pm to Monday drop off at school or if no school, drop off at 12 noon" with 14 days advance notice which weekend he would "exercise the extended weekend visit." Richardson would have the same four weeks of summer break and the same division of other school breaks and holidays as contained in the plan attached to the June 5, 2023, order. The plan required Richardson to continue testing for alcohol "as a condition of his parenting time with the children."

In addition, the court ordered Richardson to a 26-week batterer intervention program with his enrollment required by December 8, 2023. The court found that this custody and visitation order was in the best interest of the children, stating, "it's in the best interest of these children to see their father more, not less." Keogh's counsel did not raise the issue of the court having to apply the section 3044 factors prior to this parenting arrangement, nor did the attorney otherwise object to the custody and visitation order.

On October 30, 2023, almost two weeks after the DVRO hearing, Keogh moved ex parte "for an order other than announced," arguing the court erred under section 3044.[7] The court denied the motion, concluding it was "inappropriate" and not an emergency under California Rules of Court, rule 5.151 or section 3064. Nonetheless, the court clarified that Richardson only had visitation, not joint physical custody, therefore, section 3044 did not

---

[7] This ex parte request occurred outside the deadline for filing a motion for reconsideration.

apply.[8] The court calculated his parenting timeshare under the different-community plan as 113 hours out of 720 hours in the month, or 16 percent, excluding holidays and 18 percent including holidays.

Richardson subsequently submitted to the court a proposed Findings and Order After Hearing (FOAH) relating to the October 17, 2023, hearing. Keogh objected because the court did not order the preparation of a FOAH and because the court already issued the DVRO. The court issued a modified version of the FOAH on November 29, 2023, reflecting the finding that Richardson perpetrated domestic violence, the issuance of the DVRO, and the court's findings on credibility of witnesses.

## DISCUSSION

### I. *Appealability*

The October 18, 2023, custody and visitation order following the contested DVRO hearing is appealable as a final order after a judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377–1378 [finding appealable, as an order after a final judgment, an order ruling on a request to modify custody and visitation after a final order establishing the parental relationship and custody and visitation].)

### II. *Custody and Visitation*

#### A. *Different-community parenting plan is de facto joint custody.*

---

[8] We note the trial judge stated during the ex parte hearing that under section 3004, "joint physical custody [means] that both parents have significant periods of custody time, which is primarily looked at as 50/50." While section 3004 states, " 'Joint physical custody' means that each of the parents shall have significant periods of physical custody," it does not tell us what child share percentage equates to "significant periods" making a parent's time with a child joint custody. As we explain, post, child sharing plans that are not "50/50" also confer joint custody.

Section 3044, subdivision (a), establishes "a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child," which "may only be rebutted by a preponderance of the evidence." To rebut the presumption and award custody to the perpetrating parent, the court must make two findings: (1) "giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child pursuant to Sections 3011 and 3020"[9] without considering "the preference for frequent and continuing contact with both parents," and (2) on balance, enumerated factors[10] support the Legislature's public policy findings as

---

9    Section 3020 reads in relevant part:

> (a) The Legislature finds and declares that it is the public policy of this state to ensure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children. The Legislature further finds and declares that children have the right to be safe and free from abuse, and that the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the health, safety, and welfare of the child.

10    The enumerated factors are:

> (A) The perpetrator has successfully completed a batterer's treatment program that meets the criteria outlined in subdivision (c) of Section 1203.097 of the Penal Code.

> (B) The perpetrator has successfully completed a program of alcohol or drug abuse counseling, if the court determines that counseling is appropriate.

> (C) The perpetrator has successfully completed a parenting class, if the court determines the class to be appropriate.

10

provided in section 3020. (§ 3044, subd. (b).) The court is required to "make specific findings on each of" these factors. (§ 3044, subd. (f).)

In this case, after finding Richardson committed domestic violence, the court recognized that the section 3044 presumption existed. However, because the court intended to award full legal and physical custody to Keogh, with visitation to Richardson, it purposely did not engage in the section 3044, subdivision (b), analysis to determine whether the presumption was overcome. In this appeal, Keogh contends the court abused its discretion by ordering a parenting plan that involved "de facto" joint physical custody not allowed absent section 3044, subdivision (b), findings.

We review custody and visitation orders for abuse of discretion. " 'The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) " 'A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advanced the best interests of the child. [Citation.] A court also abuses its discretion if it applies improper criteria or makes incorrect legal assumptions.' " (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 662, italics

---

(D) The perpetrator is on probation or parole, and has or has not complied with the terms and conditions of probation or parole.

(E) The perpetrator is restrained by a protective order or restraining order, and has or has not complied with its terms and conditions.

(F) The perpetrator of domestic violence has committed further acts of domestic violence.

(G) The court has determined, pursuant to Section 6322.5, that the perpetrator is a restrained person in possession or control of a firearm or ammunition in violation of Section 6389. (§ 3044, subd. (b)(2).)

omitted.) It is an abuse of discretion to "order[] a visitation schedule that amount[s] to joint custody after finding father committed domestic violence against mother" without finding that father overcame the section 3044 presumption. (*City and County of San Francisco v. H.H.* (2022) 76 Cal.App.5th 531, 546.) However, to the extent an issue involves statutory interpretation, we apply de novo review. (*N.S. v. D.M.* (2018) 21 Cal.App.5th 1040, 1053.)

The Family Code defines joint physical custody as "each of the parents [having] significant periods of physical custody." (§ 3004.) While the section 3004 does not define "significant," courts have considered some scenarios. For example, "where, as in this case, a father has a child *only 20 percent* of the time, on alternate weekends and one or two nights a week, this amounts to sole physical custody for the mother with 'liberal visitation rights' for the father." (*In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, 715, italics added, criticized on other grounds by *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1097 [*Lasich* incorrect in stating that relocating with children cannot alone prove detriment to a child]; see also *In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 760 [where "father kept the child for one overnight every week and, on alternate long weekends, from Friday evening until Monday morning . . . the father had generous visitation rights"], citing *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 142.)

On the other end of the spectrum, if each parent has equal or nearly equal amounts of time, the parents have joint physical custody. (*City and County of San Francisco v. H.H., supra*, 76 Cal.App.5th at p. 544 ["The visitation schedule here, three days with father and four with mother, clearly amounted to joint physical custody."]; *S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 332 ["The court stated that it wanted S.Y. to have

12

primary physical custody and that S.Y. should have four days with A. and Omar should have three days.  This was actually a de facto joint custody order."]; *Celia S. v. Hugo H.*, *supra*, 3 Cal.App.5th at p. 664 ["by ordering the children to continue to evenly split their time with Celia and Hugo on alternating weeks, the trial court necessarily awarded Hugo joint physical custody regardless of the label the court attached to the arrangement"].)

The parenting shares in the present case fall between these scenarios.[11]  While the court believed it was awarding to Richardson a 16-to-18 percent[12] parenting timeshare under the different-community plan, we calculate the percentage at approximately 25 percent[13] when including the two long weekends.  That timeshare with the children increases to just over

---

[11]    Throughout the case the parties used a 720-hour month (30 days) which is slightly longer than four weeks (28 days).  We adopt the same convention in this opinion, understanding the calculations yield close, but not exact, child sharing timeshare percentages.

[12]    The court appears to base its calculation on the fact Richardson would care for the children 113 hours per month out of a total of 720 hours available in each month.  One hundred thirteen hours is roughly 16 percent of 720 hours.

[13]    From Thursday at 3:00 p.m. until Monday at 8:00 a.m., Richardson would have 89 hours, per long weekend, with two weekends per month totaling 178 hours.  One hundred seventy-eight hours divided by a 720-hour month equals approximately 25 percent.

30 percent if we factor in Richardson's four-week annual summer vacation period.[14]

Under the facts of this case, we conclude a 25 percent monthly parenting timeshare, along with a four-week continuous block of time during summer, and equally dividing Winter Break, Thanksgiving Break, and Spring Break[15] constitutes a significant period of physical custody that gives Richardson de facto joint custody.[16]  Even Keogh, who ostensibly had sole physical custody, would not have a four-week block of parenting time at any point during the year if Richardson exercised his full parenting timeshare. Given Richardson's parenting plan amounted to joint custody with Keogh, the trial court was required to apply the section 3044 factors to determine whether the presumption against awarding joint custody was overcome. That did not occur here and constitutes error.

B.  *Same-community parenting plan is de facto joint custody.*

We also conclude the final step of the same-community plan would constitute de facto joint custody.  This plan would provide Richardson an

---

[14]    To arrive at an average monthly visitation percentage which includes Richardson's vacation, we calculate that Richardson's four-week block of days equals 672 hours.  We subtract the 178 hours that Richardson would have gotten during his regular visitation, leaving us with 494 new hours.  We divide this period by 12 months which equals approximately 41 hours per month.  As a result, Richardson averages 178 plus 41 hours, or approximately 219 hours per month.  Two hundred nineteen hours is 30 percent of 720 hours.  We do not include here other holidays and school breaks during the year which would increase Richardson's monthly average visitation hours.

[15]    The record does not disclose the length of the Thanksgiving or Spring Breaks, but they would only add to the 30 percent visitation time.

[16]    Our holding is limited to the present facts, without deciding the maximum possible parenting time percentage that constitutes visitation.

approximately 35 percent parenting timeshare.[17]  This is a significant period of physical custody amounting to joint custody, approaching the approximately 43 percent we determined to be de facto joint custody in *S.Y. v. Superior Court*, *supra*, 29 Cal.App.5th at page 332.

As recognized by the trial court, the section 3044 presumption became applicable when the trial court found that Richardson committed domestic violence.  (*Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 197 ["A trial court's obligations under section 3044 begin once the court makes a finding of domestic violence."].)  The record before us does not leave room to infer that the court satisfied its obligations under this statute.  (See *id.* at pp. 197–198.)  Consequently, we conclude the trial court abused its discretion by ordering this parenting plan without considering the section 3044 factors.  This conclusion is consistent with the legislature's primary public policy concern of protecting "the health, safety, and welfare of children . . . when making any orders regarding the physical or legal custody or visitation of children."  (§ 3020, subd. (a).)

C.  *The trial court's order adequately specified time, day, place, and manner of the children's transfer to the other parent.*

Keogh additionally contends that the court's custody and visitation order failed to satisfy the requirements provided in sections 3031,

---

[17]    We arrive at that conclusion this way:  Two weekdays of 16.5 hours, times four weeks, equals 132 weekday hours.  Two weekends of 59 hours is an additional 118 total weekend hours.  Thus, Richardson would receive 250 hours per month; 250 divided by 720 equals approximately 35 percent.  Holidays, special days, and vacation would add between 46 and 98 hours annually, if none of those days overlap with Richardson's existing time.  Including this additional time, Richardson's parenting timeshare would increase between 0.5 and 1 percent.

15

subdivision (b),[18] and 3100, subdivision (d).[19] Those statutes require that where domestic violence is alleged, or protective orders have been issued, a court's custody and visitation orders must specify the time, day, place, and manner of transferring a child to the other parent in order to "limit the child's exposure to potential domestic conflict." (§ 3031, subd. (b).) However, Keogh failed to make any argument on that basis below and thus forfeited the argument on appeal. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

Regardless, we briefly address Keogh's arguments. First, she argues that the different-community plan fails to satisfy the time, day, place, and manner requirements because it permits Richardson to exercise his time with 14 days notice, rather than specifying certain weekends. However, the October 18, 2023, order provides the times and days for Richardson's two long weekends (Thursday after school or 3:00 p.m., to Monday at school drop off or 12 noon). There is no requirement that the order specify exact *dates*. The order specifies a place—the visitation shall occur in the children's community and transfers will occur at school or "curbside at the receiving parents' home." The order meets the time, day, place, and manner of visitation requirements.

---

18    Section 3031, subdivision (b) reads in relevant part: "Whenever custody or visitation is granted to a parent in a case in which domestic violence is alleged and an emergency protective order, protective order, or other restraining order has been issued, the custody or visitation order shall specify the time, day, place, and manner of transfer of the child for custody or visitation to limit the child's exposure to potential domestic conflict or violence and to ensure the safety of all family members."

19    Section 3100, subdivision (d) reads in relevant part: "If visitation is ordered in a case in which domestic violence is alleged and an emergency protective order, protective order, or other restraining order has been issued, the visitation order shall specify the time, day, place, and manner of the visitation . . . ."

Second, Keogh complains that the order merely provides for "reasonable telephone contact." But the order goes further and specifically provides for video visits Tuesday and Thursday evenings, and Sunday at 8:00 a.m. or 6:30–7:00 p.m. The order is sufficiently specific as to telephone communication.

## DISPOSITION

We reverse the family court's custody and visitation order. On remand, the court shall hold a further hearing to determine whether the section 3044 presumption is rebutted. If not, then the court must reconfigure the parenting plan so it does not amount to joint custody for Richardson. If the section 3044 factors are rebutted the court may leave the current parenting plan in place. Keogh is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

                                                          RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.