Filed 2/10/21  Gobron v. Pesheva CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| STEPHANE GOBRON,<br><br>    Appellant,<br><br>    v.<br><br>MARIA PESHEVA,<br><br>    Respondent. | B294271<br><br>(Los Angeles County<br>Super. Ct. No. GF003972) |

APPEAL from orders of the Superior Court of Los Angeles County, Shirley K. Watkins, Judge.  Affirmed.

Brian G. Magruder for Appellant.

James Alex Karagianides for Respondent.

———————————————

Appellant Stephane Gobron (father) and respondent Maria Pesheva (mother) were never married, but are the parents of seven-year-old twin children. In 2016, mother was granted sole legal and primary physical custody of the children, and father was ordered to pay child support. The following year, father sought modification of the child support order, contending that he had been furloughed from his job. The court temporarily suspended father's child support and set the matter for a hearing. Prior to the hearing, father apparently filed an income and expense declaration stating he had a new job and was earning in excess of $8,000 per month; however, there is no evidence that he served the income and expense declaration on mother, and the declaration does not appear in the superior court's docket. The court apparently was not aware of father's new employment, and it issued an order suspending father's child support until further court order. Father did not advise the court of its error and did not pay any child support for more than 18 months.

In May 2018, mother filed a motion for current and retroactive child support. The trial court found father had failed to disclose his new employment as it had ordered him to do, and it thus ordered father to pay child support retroactive to the date he began working. The court further ordered father to pay mother attorney fees of $2,750 "because of his bad faith conduct which required the hearing on this motion."

On appeal, father challenges nearly all elements of the trial court's order, contending that the trial court lacked authority to enter a modified child support order, erred in calculating support under California's uniform support guidelines, and abused its discretion by ordering retroactive support and attorney fees. As we discuss, we conclude that father forfeited the first two

2

contentions by failing to raise them below, and his latter two contentions lack merit. We therefore affirm the trial court's orders in full.

## FACTUAL AND PROCEDURAL BACKGROUND

*A.    Background*

Mother and father are the parents of twin children, A. and D., who were born in January 2013. Father is an engineer, and mother is an ophthalmologist and eye surgeon.

Father filed a paternity action immediately after the children's birth. Following a contested trial, the court entered a judgment in December 2015 that determined paternity and made child custody and support orders. Mother was given primary physical custody of the children, as well as the authority to make health-care decisions for the children; as to all other issues, the parents were ordered to make decisions jointly. The court ordered father to pay mother child support of $1,738 per month, plus 50 percent of uninsured health care expenses.

*B.    August 31, 2016 Order*

On August 31, 2016, after further litigation between the parties, the court granted mother sole legal and primary physical custody of the twins. The court explained the basis for its order as follows:

"After many appearances in court by [father], the court was able to experience first-hand the extraordinarily contentious nature of his personality. His testimony was presented in a manner which was consistently strident, argumentative, and rude to the court, [mother], and opposing counsel. He was uncompromising in his testimony and positions. His face was angry, livid, and his voice was often raised. His entire demeanor was abusive and demanding and he seemed on the verge of a

3

tantrum at many points.  By contrast, [mother] throughout these proceedings talked in a calm, gentle voice; she has been courteous to [father] and has never argued with him nor raised her voice. She has been respectful of the proceedings and has never seemed aggravated or upset, despite the prolonged nature of these proceedings. . . .

"Analyzing the dynamic between the parties, the court finds that [mother] constantly has to pacify or accommodate [father] because of the aggressiveness of his physical posture and tone of voice.  [Father] had no insight into his own aggressiveness or the inappropriateness of his tone of voice or angry visage. [Mother] appeared emotionally battered in her posture and demeanor in court.  The court believes exposing the children to this dynamic or to a father who cannot control himself in this manner ultimately will have a very damaging effect on the children.

"The current custody orders fashioned by the court are untenable due to the contentious nature of the parties' relationship. . . .  Having now evaluated the parties' demeanor in the courtroom on several occasions, the deteriorating situation between the parties, the twins' exhaustion (as described by both parents), and having considered the parties' many declarations, the court concludes that while [mother] has been willing to modify her behavior and try to co-parent, [father] remains intransigent, immature, and hostile to [mother].  The court sees no likelihood whatsoever of his gaining insight into his behavior nor being able to co-parent.  The court finds his pugnacious conduct, his disparaging comments about [mother], his inflexibility and his belief that he is the only parent to offer anything to the children will result in further conflict and

4

emotional distress for the children, from which they must be protected. . . . [¶] . . . [¶]

"Accordingly, the court finds that there has been a substantial change of circumstance since the court last made its custody orders, that the children are at risk of being engulfed in the virulent relationship which the father is intent on fostering, and that it is in the best interests of the children to . . . award[] [mother] sole legal [custody] on all issues, not only medical. She shall provide the father with information about the children's health, education, and welfare, but she shall have final decision-making power. To rule otherwise would inflict on [mother] and the children, endless vituperative and over-bearing arguments by their father as he attempts to gain his way in all decisions, regardless of whether the mother's input is more appropriate for the children."

The court granted father overnight visits with the children on alternating weekends, plus holidays. Based on the visitation schedule, the court found father's custodial share was approximately 20 percent, and it increased his child support obligation to $2,335 per month ($1,735 in guideline support, plus $600 for childcare expenses).

C.     *Father's Request to Modify Child Support*

In November 2016, father filed requests to increase visitation and reduce child support. In support, he submitted an income and expense declaration stating that he was still working for the same employer, Andrew Technologies, LLC, but his salary had been reduced. Subsequently, on February 15, 2017, father filed another income and expense declaration stating he had been furloughed by Andrew Technologies on February 13, 2017.

5

On March 2, 2017, the court ordered father's child support obligation temporarily reduced to zero, and it continued the hearing to May.

On April 19, 2017, father filed a declaration that stated, among other things, that as of March 6, 2017, he was "working a full-time salaried position at MDIC (Irvine, CA), with a weekly gross salary of $2,000." There is no evidence that father served the April 19 declaration on mother. Thereafter, on May 3, 2017, father apparently filed an income and expense declaration that contained similar information—i.e., that father began working at MDIC on March 6, earning a gross salary of $2,000 per week. Although the income and expense declaration bears a "conformed" file stamp, it does not appear in the trial court's docket and does not include a proof of service on mother.

The court held a hearing on May 10, 2017, and on June 12, 2017, it issued a written order reducing father's child support obligation to $0 commencing March 2017 and continuing until further order of the court. The express basis for the elimination of child support was the court's erroneous belief that father was not employed: The order recites that father's income as of February 15, 2017 "declined to zero as he was furloughed by Andrew Technologies."[1] The court ordered father to make at least three job inquiries each week, and to provide mother "with copies of any correspondence with Andrew Technologies that reflects that he has been permanently terminated, rehired, or

[1] It is clear from the order that the court was not aware father had filed another income and expense declaration in May. The order says: "Neither party appeare[d] to have filed a new Income and Expense Declaration after March 2, 2017."

6

taken off furlough, as well as copies of his pay stubs for the first three months when his employment status with Andrew Technologies changes."  The court also advised father that he had "an equal responsibility to support the children provided he is capable of full time employment[,] and that the court may impute income to [father] should he fail to do so."

> D.     *2017 Requests for Orders*

In August 2017, both mother and father filed motions that are not part of our appellate record, but which appear to have addressed child support, visitation, attorney fees, and sanctions. On March 14, 2018, the court entered an order that denied father's request for attorney fees and sanctions but, for reasons not apparent from the record, did not address any other pending issues.

> E.     *Mother's Request to Modify Child Support and for Retroactive Child Support; Father's Request for Joint Legal and Physical Custody*

On May 18, 2018, mother filed a request for current and retroactive child support.  Mother asserted that father was employed, but had not paid any child support since February 2017.  She therefore asked the court to enter a support order based on the child support guideline and to make the order retroactive to the date father became employed.  Mother asserted: "Both [father] and [mother] requested modifications of the support order in August of 2017.  The matter was continued several times and [mother] believed that when the court took all matters under submission at the last hearing that child support would be addressed and . . . ordered.  It was not.  [Mother] needs guideline support."

On June 1, 2018, father filed a request for joint legal and physical custody of the children. Father argued that a change in custody was appropriate in light of his changed circumstances—namely, he had moved from Irvine to San Gabriel, and thus he was living near mother's residence and the children's school.

Father filed an updated income and expense declaration on August 20, 2018. It stated that during the preceding 12 months (August 2017 through July 2018), father had been employed by both MDIC, for whom father began working on March 6, 2017, and Andrew Technologies, which apparently rehired father or took him off furlough at some unspecified date.[2] Father stated that his most recent month's income was $11,499, and his average monthly income during the last 12 months was $9,193. Both calculations were based on combined earnings from MDIC ($5,200—$12,300/month) and Andrew Technologies ($3,226—$6,299/month).

Although father acknowledged that he had been employed since March 6, 2017, he objected to mother's request for support prior to May 18, 2018, the date mother filed her modification request. Father asserted that he had disclosed his MDIC income in his April 19, 2017 declaration, his May 3, 2017 income and expense declaration, a motion for reconsideration filed June 22, 2017, and a response to mother's declaration filed in October 2017.[3] Thus, he asserted, mother had been on notice prior to the

---

[2] Because father's August 20 income and expense declaration addressed only the preceding 12 months, it did not indicate when father resumed working for Andrew Technologies.

[3] The latter two documents are not part of our appellate record.

May 10, 2017 hearing that father had resumed gainful employment, and she "could have used this information at said hearing and requested a support order based on the income I had disclosed in my Income and Expense Declaration. However, for whatever reasons, she did not."

Father estimated based on mother's December 15, 2017 paystub that her current gross income was $144,670 per year, or $12,580 per month. Because mother worked approximately 24 hours per week, father asserted mother was "under employed," and he asked that child support be based on mother's earning capacity, rather than on her actual income.

F.      *August 30, 2018 Hearing*

The court held a combined hearing on mother's and father's motions on August 30, 2018. Mother's counsel noted that father had not paid any child support in over a year, and that mother had expected child support to be addressed in the court's most recent order. Counsel thus asked that support be awarded retroactively.

The court asked father whether he had paid anything towards the children's support since March 2017; father said he had bought the children food and clothes and had paid "what the court order stated." Father also admitted that he had started a new job "three or four days" after the March 2, 2017 hearing, and he contended that he had filed an updated income and expense declaration disclosing his new income in April 2017, and "four times in the last six months."

At the conclusion of the hearing, father's counsel told the court that mother had not filed an income and expense

declaration with her request for child support.[4] The court noted that the docket showed mother had filed an income and expense declaration in January, and it asked whether mother's income had changed since then. Her counsel said it had not. The court thus directed mother to file and serve a current income and expense declaration no later than September 4, 2018, and it said that all pending matters would be submitted as of that date.

Mother filed an updated income and expense declaration immediately after the hearing. It stated that mother continued to work for Dr. Paul Urrea, earning an average monthly salary of $12,751, and her childcare expenses were $500 per month.

G. *September 7, 2018 Orders*

1. Child Support Order

On September 7, 2018, the court ordered father to pay child support of $1,678 per month beginning March 6, 2017. The court stated that its support order was based on father's average income of $11,499 per month, mother's average income of $12,580 per month, childcare expenses of $500 per month, and an 80/20 custody split. The court explained that it was electing to make its order retroactive to March 6, 2017 because "[father] was granted a temporary stay of child support and was ordered to disclose new employment and earnings[,] which he failed to do. Because [mother] should not have been prejudiced by this failure to disclose, child support is retroactive to the date of his new employment."

---

[4] Mother's counsel said mother had attached a current income and expense declaration to her May 18, 2018 motion for child support. The court did not find that document in its docket, but it noted that the clerk's office recently had not been separately filing declarations attached to requests for orders.

10

The court also ordered father to pay mother attorney fees of $2,000 pursuant to Family Code[5] section 271 "because of his bad faith conduct which required the hearing on this motion. [¶] The bases for this ruling include: [¶] ATTORNEY FEES [¶] A. The court finds that the attorney fees requested by [mother] are reasonable and necessary because of [father's] conduct in failing to disclose his income as required by the court. [¶] B. Father made his payment of guideline child support dependent on changes to the custody order in his declaration of 2/5/18, further evidence of his bad faith."[6]

### 2. Custody and Visitation Order

In a separate order, the court denied father's request for a change in legal and physical custody, denied father's request for changes to the visitation order, and granted mother attorney fees of $750. The court found that changes in custody and visitation were not in the children's best interests, noting that it found credible "the testimony of mother that father continues to engage in obstreperous behavior, continues to disregard co-parenting, continues to diminish and disrespect the mother, routinely embroils the children in this litigation, and is self-centered and not child-centered."

On November 30, 2018, father timely appealed from the September 7, 2018 orders.

---

[5] All subsequent undesignated statutory references are to the Family Code.

[6] Father attached to his reply declaration (filed August 23, 2018) a June 22, 2018 email to mother in which he offered to resume paying guideline support if mother agreed to increase visitation.

## DISCUSSION

Father makes 13 separate arguments in support of reversal, but his contentions may be summarized as follows:

(1)     The trial court abused its discretion by modifying the child support order because mother did not submit a current income and expense declaration prior to the August 30, 2018 hearing;

(2)     The trial court erred in calculating guideline child support because it miscalculated mother's and father's salaries and custodial percentages;

(3)     The trial court abused its discretion by making its child support order retroactive to March 6, 2017; and

(4)     The trial court exceeded its jurisdiction by ordering father to pay mother's attorney fees and costs.

As we discuss, each of father's contentions either was forfeited or is without merit.  We therefore will affirm in full.

## I.

## Legal Standards

"California has a strong public policy in favor of adequate child support."  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283, citing *County of Kern v. Castle* (1999) 75 Cal.App.4th 1442, 1455; *Stewart v. Gomez* (1996) 47 Cal.App.4th 1748, 1754.)  That policy is expressed in statutes embodying the statewide uniform child support guideline, which require courts "to adhere to certain principles, including these:  'A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.'  (§ 4053, subd. (a).)  'Each parent should pay for the support of the children according to his or her ability.'  (§ 4053, subd. (d).)  'Children should share in the standard of living of both parents.

12

Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children.' (§ 4053, subd. (f).)" (*In re Marriage of Cheriton*, at p. 283.)

"The amount of child support normally payable is calculated based on a complicated algebraic formula found at Family Code section 4055. Although this formula is referred to as the statewide uniform 'guideline' (§ 4055), 'guideline' is a misleading term. (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183.) The formula support amount is 'presumptively correct' in all cases (see §§ 4053, subd. (k), 4057, subd. (a)), but 'may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case . . . .' (§ 4057, subd. (b).)" (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1047–1048, fn. omitted.)

"A trial court's award concerning child support is reviewed for abuse of discretion. [Citations.] Likewise, a determination regarding a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below. [Citation.] In addition, a trial court's decision whether to make an order for child support retroactive is reviewed under an abuse of discretion standard. [Citation.]

"Of course, the trial court's discretion is not unfettered. It has ' "a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . ." [Citation.]' [Citation.] Moreover, we are mindful that the deferential standard concerning child support orders is tempered significantly by this state's uniform child support guideline . . . . 'In short, the trial court's discretion is not so broad that it "may

13

ignore or contravene the purposes of the law regarding . . . child support." ' " (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 555.)

## II.
## Father Forfeited His Objection to the Trial Court's Entry of a Modified Child Support Order

Father urges that the trial court lacked discretion to proceed with the August 30 hearing and to enter a child support award because mother did not file an income and expense declaration prior to the hearing. He contends that allowing mother to update her income and expense declaration after the hearing precluded him from " 'meeting and rebutting' " mother's evidence of her income and, thus, denied him a fair trial. Alternatively, father urges that mother's untimely submission of her income and expense declaration violated the California Rules of Court.

Mother contends that father forfeited this contention by failing to raise it below, and we agree. A party forfeits his or her right to challenge a ruling on appeal by failing to raise the issue in the trial court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) " '[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]' [Citation.]" (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 672; see also *In re A.C.* (2017) 13 Cal.App.5th 661, 671 [" ' "An appellate court will ordinarily not consider procedural defects . . . where an objection could have been but was not presented to the lower court by some

14

appropriate method" ' "]; *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 [same].)

In the present case, father knew well in advance of the August 30 hearing that mother had not filed an updated income and expense declaration; indeed, it was father's counsel who brought the issue to the court's attention. In response, the court ordered mother to file an income and expense declaration no later than September 4, and it said that all pending matters would be submitted as of that date. Neither father nor his counsel objected to the court's order, requested a continuance of the hearing, or requested the opportunity to submit a response to mother's income and expense declaration. Nor did father file an objection, response, or request for further hearing during the seven days between mother's filing of her updated income and expense declaration and the issuance of the court's order. Accordingly, father failed to preserve the issue for appeal.[7]

---

[7]     Although it is not relevant to our forfeiture analysis, we note that mother's updated income and expense declaration reflected nearly the same income father himself had attributed to mother. In his August 20, 2018 submission to the court, father estimated that mother's average monthly income was $12,580; mother's actual average monthly income, as reflected in her amended income and expense declaration, was $12,751. Under these circumstances, were we to reach father's contentions on the merits, we would be hard-pressed to find a violation of father's "constitutionally guaranteed right to a fair trial."

15

# III.

## Father Forfeited His Specific Objections to the Trial Court's Modified Child Support Order

In addition to challenging the trial court's authority to order him to resume paying child support, father also challenges the court's support calculation. Specifically, father contends the trial court erred by calculating guideline support based on (1) father's most recent monthly income, rather than his average monthly income, (2) father's estimate of mother's income, rather than mother's actual income as disclosed in her income and expense declaration, and (3) an erroneous estimate of each parent's custodial time.

Mother contends father forfeited these contentions by failing to raise them below and, again, we agree. "For better or worse, California child support law now resembles determinate sentencing in the criminal law: The actual calculation required of the trial judge has been made . . . so complicated (see generally, Fam. Code, § 4055) that, to conserve judicial resources, any errors must be brought to the trial court's attention at the trial level while the error can still be expeditiously corrected." (*In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 144.) If the parent fails to do so, the errors are forfeited. (*Ibid.*)

*In re Marriage of Whealon, supra*, 53 Cal.App.4th 132, is illustrative. There, a father asserted on appeal that the trial court had overstated his income for purposes of determining child support by using only his last month's income, rather than an average of the last 12 months. (*Id.* at pp. 143–144.) The Court of Appeal held that because the father had failed to bring the error to the attention of the trial court in a motion for reconsideration, the error was forfeited. (*Id.* at p. 144.)

Similarly, in *In re Marriage of Hinman, supra*, 55 Cal.App.4th at p. 1002, a noncustodial mother urged that the trial court had improperly calculated child support by, among other things, miscalculating father's federal withholding exemptions and custodial time. The Court of Appeal held mother had forfeited these alleged errors by failing to raise them below: " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been, but was not, presented to the lower court by some appropriate method. [Citations.] [Citation.]' Failure to object to the ruling or proceeding is the most obvious type of implied waiver. [Citation.] Accordingly, [mother] is foreclosed from challenging the computation of the child support award on appeal." (*Ibid.*; see also *In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 37 [father forfeited alleged child support calculation error by failing to ask trial court to accept revised Dissomaster calculation during hearing on motion for reconsideration]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2020), ¶ 6:250 ["any claimed error in the formula support calculation . . . must be brought to the trial court's attention (by objection to the evidence, by motion for reconsideration or otherwise) while the error can still be expeditiously corrected; otherwise, the error is waived"].)

In the present case, the record does not reflect that father brought any of the alleged errors of which he now complains to the trial court's attention, either at the hearing, in a post-hearing motion for reconsideration, or otherwise. Accordingly, father is foreclosed from challenging the trial court's computation of the child support award.

# IV.

## The Trial Court Did Not Abuse Its Discretion
## by Ordering Child Support as of March 6, 2017

Father contends the trial court erred by making its award of child support retroactive to March 6, 2017. As we discuss, we find no abuse of discretion.

### A. *Legal Principles*

Under California law, both parents are "mutually responsible for the support of their child[ren]." (See § 4053, subd. (b); see also § 3900.) This principle is embedded in California's statutory statewide uniform guideline, which calculates support based principally on each parent's net disposable income and custodial time. (§§ 4055, 4060; *In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1245.)

By his own admission, father was employed at all times between March 6, 2017 and September 7, 2018. For the periods March through May 2017 and August 2017 through July 2018, father's monthly income was never less than $8,200, and in some months it exceeded $12,000.[8] Accordingly, there can be no real dispute that father's income throughout the 18 months at issue would have required a guideline child support award well above $0.

Although father appears to concede his income would have justified a child support award during the relevant period, he urges that the trial court was precluded by section 3651 from ordering support retroactive to a date prior to May 18, 2018, the

---

[8] The appellate record does not contain information about father's income in June or July 2017.

day mother filed the present modification request.[9]  Not so.
Section 3651, subdivision (c)(1), provides that, with exceptions
not relevant here, a support order "may not be modified or
terminated *as to an amount that accrued* before the date of the
filing of the notice of motion or order to show cause to modify or
terminate."  (Italics added.)  " 'Accrued' means 'past due.' "  (*In re
Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203,
1212, citing *Taylor v. Superior Court* (1990) 218 Cal.App.3d 1185,
1188.)  By its plain language, thus, this section precludes courts
from retroactively forgiving past-due support.  (E.g., *S.C. v. G.S.*
(2019) 38 Cal.App.5th 591, 600 [support arrears].)[10]  In the

---

[9]      Although child support ordered for any period prior to the
entry of an order technically is "retroactive," the Family Code
distinguishes between support orders that concern periods *before*
and *after* the filing of a notice of motion or order to show cause to
modify or terminate support.  (E.g., § 3653, subd. (a).)  Because
father concedes trial courts have discretion to award child
support retroactive to the date a request to modify support is
filed, for purposes of this opinion we will use the term
"retroactive support" to refer only to support that *predates* a
motion to modify support.

[10]      This section implements federal law, which requires each
state to "have in effect laws requiring" that each installment of
child support "is (on and after the date it is due)—[¶] (A) a
judgment by operation of law, with the full force, effect, and
attributes of a judgment of the State, including the ability to be
enforced, [¶] (B) *entitled as a judgment to full faith and credit* in
such State and in any other State, and [¶] (C) not subject to
retroactive modification by such State or by any other State;
[¶] except that [a state] may permit modification with respect to
any period during which there is pending a petition for
modification . . . ."  (42 U.S.C. § 666(a)(9)(B)), italics added; see *In*

19

present case, however, father was not ordered to pay any support between February 2017 and September 2018, and thus no support "accrued"—i.e., was past due—as of the date of the filing of the notice of motion. Section 3651, subdivision (c), thus, does not govern the present case.

Father's contention regarding retroactive child support arguably finds some support in section 3653, which father has not cited. Section 3653 says that an order modifying or terminating a support order "may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3653, subd. (a).) Some appellate opinions have said this provision " 'permit[s] the trial court to make its ruling retroactive to the filing date of the motion, *but no earlier.*' " (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26, italics added; see also *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638 ["even on a showing of changed circumstances, a 'court may not *retroactively* modify a prior order for temporary spousal support' "]; *S.C. v. G.S.*, *supra*, 38 Cal.App.5th at pp. 598–599 [" ' "[t]he Legislature has established a bright-line rule that accrued child support vests and may not be adjusted up or down. [Citations.] If a parent feels the amount ordered is too high—or too low—he or she must seek prospective modification" ' "].) Significantly, however, none of these opinions applied section 3653 as father would have us do here, to shield a noncustodial parent from paying retroactive support based on undisclosed or unattributed income. To the contrary, each of the cited cases

---

*re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 818.) Plainly, a temporary suspension of child support is not a "judgment" which may be accorded "full faith and credit."

considered a noncustodial parent's request to retroactively *decrease* support, not to increase it. (See *Stover v. Bruntz, supra*, 12 Cal.App.5th at pp. 26–27, 29–30 [trial court abused its discretion by retroactively reducing father's child support arrearages by giving father a "credit" for months in which mother could not prove childcare expenses; allowing father to retroactively avoid childcare costs "could seriously destabilize the minor children's home life and [mother's] ability to meet their needs"]; *In re Marriage of Gruen, supra*, 191 Cal.App.4th at p. 639 [trial court exceeded its jurisdiction by reducing father's support obligation retroactively; mother was "entitled to rely on the amount of temporary support ordered without the threat of having to repay or credit [father] with any portion of accrued support"]; *S.C. v. G.S.*, at p. 600 [trial court abused its authority by absolving father of support arrears and associated interest that had accrued years earlier].)

Moreover, notwithstanding the language of section 3653, appellate courts have affirmed orders retroactively modifying support where appropriate in light of the equities of particular cases. For example, In *In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1476–1478, the Court of Appeal held that the trial court did not abuse its discretion by setting aside a stipulated support order and retroactively increasing a father's child support obligation to a date prior to the mother's filing of a modification request because "special circumstances" and "the interest of fairness" so required. Similarly, in *In re Marriage of Ford* (1972) 24 Cal.App.3d 62, 64–68, the trial court was held not to have abused its discretion by directing a father to pay a portion of a child's medical expenses incurred prior to the date the mother filed an order to show cause. (See also *In re Marriage*

21

*of Spector* (2018) 24 Cal.App.5th 201, 207–218 [trial court did not abuse its discretion by, on its own motion, retroactively modifying spousal support order to correct errors]; *In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1073–1076, [trial court not precluded from retroactively amending spousal and child support orders because it had expressly reserved jurisdiction to do so]; *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 593–594, 599–600, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 [affirming order retroactively reinstating spousal support and awarding arrearages; although trial court had abused its discretion years earlier by reserving right to award support retroactively, husband had not challenged that order, and thus the retroactivity provision was beyond the reach of the current appeal]; see also *In re Marriage of Starr* (2010) 189 Cal.App.4th 277, 290–291 [where support order was based on obvious Dissomaster error, whether noncustodial parent was entitled to credit for past overpayment was within the trial court's sound discretion; trial court did not abuse its discretion by declining request for credit].)

    B.    *Analysis*

    Taken together, the cases cited above stand for the proposition that trial courts do not abuse their discretion by retroactively modifying child support orders in some limited cases as necessary to correct obvious errors and to assure children are appropriately supported.  For the reasons that follow, we conclude that this is such a case.

    First, as noted above, California has a strong public policy in favor of adequate child support.  (E.g., *In re Marriage of Cheriton*, *supra*, 92 Cal.App.4th at p. 283; *County of Kern v. Castle*, *supra*, 75 Cal.App.4th at p. 1455.)  Permitting father to

entirely evade his statutory obligation to support his children for well more than a year would be wholly inconsistent with the principles articulated in the child support guidelines.

Second, family courts are, fundamentally, courts of equity. (See *In re Marriage of Siva*, *supra*, 53 Cal.App.5th at p. 1181; *In re Marriage of Calcaterra & Badakhsh*, *supra*, 132 Cal.App.4th at p. 38.) Accordingly, "[a]lthough a court cannot transgress statutory mandates, family law proceedings ' "are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity." ' " (*In re Marriage of Siva*, at p. 1181.) In the present case, the equities plainly favor an award of retroactive support. As we have said, the trial court relieved father of his child support obligation in June 2017 based on its mistaken belief that father was unemployed and had no income. In fact, father was earning in excess of $8,000 per month at a new job he began more than two months before the court entered its order. Although the error was apparent on the face of the court's order, father did not bring it to the court's attention; instead, he took advantage of the error by failing to make any child support payments for more than 18 months. Under these circumstances, father "is in no position to complain" about the court's retroactive correction of its error. (*In re Marriage of Calcaterra & Badakhsh*, at p. 38.)

Finally, pursuant to section 290, a judgment or order made or entered pursuant to the Family Code "may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary." In the present case, the trial court ordered father in June 2017 to advise mother when he resumed working, and to provide her "with copies of any correspondence

23

with Andrew Technologies that reflect that he has been permanently terminated, rehired, or taken off furlough, as well as copies of his pay stubs for the first three months when his employment status with Andrew Technologies changes." Despite this order—and notwithstanding father's present admission that he received income from Andrew Technologies in nearly every month between August 2017 and July 2018—there is no evidence in the appellate record that father ever advised mother that he had been reinstated by Andrew Technologies.

There similarly is no evidence that father timely advised mother that he began working for MDIC in March 2017. Although father contends he filed and served declarations on April 19 and May 3, 2017 that disclosed his employment with MDIC, he has not provided this court with proofs of service on mother of either declaration. The trial court's docket similarly does not reflect that proofs of service were filed in connection with these declarations.[11] Under these circumstances, the order did not exceed the trial court's broad discretion to enforce its order that father disclose to mother when he became reemployed.

---

[11] Although father contends he disclosed his new job at MDIC at the May 10, 2017 hearing, his disclosure plainly was not sufficiently clear to communicate to either the court or to mother that father was employed. Father's statement to the court, as reflected in the reporter's transcript of proceedings, is as follows: "[B]ack in October of 2016 my salary again was cut in half. I have provided [the] pay stub, W-2 and clearly establishing that. [¶] Eventually I lost the job because the company furloughed every employee, give or take, and I have to look for a new job. [¶] I have provided new I and E with pay stub associated with my new position, so clearly this is not the story. Clearly this is the truth."

In short, father's evasive conduct and failure to clearly apprise the court and mother of his employment status allowed him to avoid his child support obligation for more than 18 months. In light of the unique facts of this case, we conclude the trial court did not abuse its discretion by ordering father to pay child support retroactive to March 6, 2017.

**V.**

**The Trial Court Did Not Abuse Its Discretion**
**by Awarding Fees and Costs Pursuant to Section 271**

*A.      Legal Standards*

Section 271 provides, in relevant part: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." (§ 271, subd. (a).)

" 'We review an award of attorney fees and costs under section 271 for abuse of discretion. [Citation.] "Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable

25

inferences in its favor, no judge could reasonably make the order. [Citation.]" [Citation.] We review any factual findings made in connection with the award under the substantial evidence standard.' " (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1177.)

B.  *Analysis*

Father's sole contention with regard to attorney fees is that the trial court exceeded its jurisdiction in ordering him to pay fees and costs under section 271 because "[t]he record is devoid of any evidence of the amount of attorney's fees and costs [mother] incurred as result of [father's] alleged failure to disclose his income." Father does not support his contention with citations to any authority suggesting section 271 requires such evidence, however, and the law is to the contrary.

*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, is illustrative. There, the appellant made a contention similar to father's here—that the trial court's award of fees to his former wife under section 271 was improper because she "provided no evidentiary support as to the amount of attorney fees and costs she had incurred." The Court of Appeal disagreed, finding no abuse of discretion. It explained: " '[T]he only stricture imposed by section 271 is that the sanction may not impose "an unreasonable financial burden" on the party sanctioned.' (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 403.) [Husband] does not challenge the financial impact of the sanctions order upon him. Further, [husband's] argument as to the lack of supporting evidence fails because a sanctions award under section 271 need not 'be limited to the cost to the other side resulting from the bad conduct.' (*In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [addressing Civ. Code, former § 4370.6,

26

the substantively identical predecessor statute to Fam. Code, §271].)  Because section 271 is not a need-based statute and does not require a correlation between the sanctioned conduct and specific attorney fees, it was not essential that [wife] demonstrate her current financial situation and attorney fees." (*Id.* at pp. 1226−1227; see also *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 994 [no merit to wife's challenge to order requiring her to pay former husband's attorney fees; " 'a sanctions award under [Family Code] section 271 need not "be limited to the cost to the other side resulting from the bad conduct." [Citation.] . . . [It] does not require a correlation between the sanctioned conduct and specific attorney fees. . . .' "].)

Because evidence of mother's attorney fees was not required under section 271, the trial court did not abuse its discretion by entering an attorney fee award in the absence of such evidence.

## DISPOSITION

The September 7, 2018 orders are affirmed.  Mother is awarded her appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

DHANIDINA, J.