Filed 7/12/23  Marriage of Peric CA1/1

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of ASHLEY A. and MICHAEL G. PERIC.<br><br>ASHLEY A. MCKENZIE,<br><br>      Appellant,<br><br>v.<br><br>MICHAEL G. PERIC,<br><br>      Respondent. | A163413<br><br>(Alameda County<br>Super. Ct. No. HF13704307)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 16, 2023, be modified as follows:

1.  On page 21, footnote 5, delete the text of the footnote and replace it with the following text, so that footnote 5 reads:

> Father requests that we award him $7,500 for the attorney fees and costs he incurred in defending against this appeal.  However, he has not supported his request with authority or argument.  We therefore deny his request for appellate attorney fees without prejudice to Father to seek such fees in the trial court.  (See *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 459.)

There is no change in the judgment.

The petition for rehearing, filed June 22, 2023, is denied.

1

Dated: _____ Humes, Presiding Justice.

Filed 6/16/23  Marriage of Peric CA1/1 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of ASHLEY A. and MICHAEL G. PERIC.<br><br>ASHLEY A. MCKENZIE,<br><br>     Appellant,<br><br>v.<br><br>MICHAEL G. PERIC,<br><br>     Respondent. | A163413<br><br>(Alameda County<br>Super. Ct. No. HF13704307) |

Appellant Ashley A. McKenzie (Mother) appeals from an order denying her request to relocate with the parties' children to Hawaii.  Mother asserts the trial court erred by (1) failing to apply the presumption under Family Code section 3044[1]; (2) disregarding that Mother was the children's primary caretaker before her move to Hawaii; (3) failing to assume that Mother was moving to Hawaii; and (4) making findings unsupported by evidence.  We affirm.

---

[1] Undesignated statutory references are to the Family Code.

1

# I.  INTRODUCTION

## A. *Initial Custody and Visitation Orders*

Mother and respondent Michael G. Peric (Father) married in 2010. They have three children, a son born in 2011, a daughter born in 2013, and a daughter born in 2015.

In November 2013, Mother filed a petition for dissolution of marriage. The parties subsequently reconciled, and then separated again.  In November 2016, Mother obtained a five-year domestic violence restraining order, directing Father to stay away from her and prohibiting him from contacting their children.  The court amended the restraining order the following month to provide Father court-ordered supervised visitation with the children for two to three hours a day, three days a week.  The court granted Mother sole legal and physical custody of the children.

The court amended the restraining order in 2017 to provide Father a few more hours of visitation time with the children per week.  In 2018, the court again amended the restraining order, increasing Father's visitation time with the children to a "22% timeshare[,]" which included every other weekend from Friday to late Sunday.  The following year, the court extended Father's weekend visitation time to Monday morning.

The court terminated marital status in December 2018, and entered judgment on reserved issues in December 2019.

## B. *The Parties' Petitions for a Change of Custody*

In December 2019, Father filed for a change of custody and for a hearing to rebut the section 3044 presumption against awarding sole or joint custody to a perpetrator of domestic violence.  A few weeks later, Mother filed a request to modify child custody and to relocate the children to Hawaii.  The

court appointed Dr. Janella Street to prepare an updated custodial evaluation report, and it set the matters for trial.

Before the trial, both parties sought emergency orders. Mother moved for an order allowing her to relocate to Hawaii with the children pending the outcome of the trial. She stated that her husband received military orders to transfer to Hawaii by July 8, 2020, and that her and the children would be homeless as of June 26, 2020. Father sought an order requiring the parties' son to remain in his care for the next two weeks, and then to alternate weeks between the parties. After hearing the parties' arguments, the court permitted Mother to go on vacation with the children during the first four weeks of summer but ordered her to return with the children to California by August 7, 2020.

On August 4, 2020, Mother requested an order suspending the return of the children on August 7, claiming that Father refused to provide his address in violation of the court's order. Mother further declared that she was unable to return to California on August 7, because she lost her job in California, she and her husband had moved into their new home in Hawaii, and Hawaii had extended its COVID-19 quarantine order.

A few days later, the court ordered Father to travel to Hawaii to pick up the children and to maintain a regular visitation schedule for Mother upon his return to the Bay Area. The children briefly returned to Hawaii in October for Mother's "home visit" with Dr. Street. The children otherwise remained in Father's care until trial in December.

On December 7 and 8, 2020, the court heard Father's request to rebut the section 3044 presumption. It bifurcated Mother's move-away request because Dr. Street had not yet completed her report. The trial court received numerous exhibits into evidence and heard testimony from Mother and

3

Father.  Upon the conclusion of the hearing on December 8, the trial court stated on the record that Father had rebutted the section 3044 presumption, and it granted the parties joint legal and physical custody.

Trial was held on Mother's move-away request in March 2021.  The court received documentary evidence, including Dr. Street's report, and heard from the parties, Dr. Street, Mother's husband, and Mother's grandmother.

The trial court filed a tentative decision in July 2021 and, after considering objections from Mother, filed a statement of decision in August. The court disagreed with Dr. Street's recommendation for the children to relocate with Mother to Hawaii, concluding that other factors outweighed her finding that Mother's home had less conflict than Father's home.  The court found that the "dominating" factors were that Father was "far more likely to promote the minors' relationship with the other parent than" Mother, and that if Mother's request was granted, "there [was] a substantial risk that [Mother] w[ould] effectively cut off the minors' relationship with" Father. The court also noted that the children "have effectively lived with [Father] full time since August 2020," and that the parties' son was more bonded to Father than Mother and had done well under Father's care.  The court awarded the parties joint physical custody, with the children to live with Father during the school year.  The court also granted Father sole legal custody over educational issues and joint legal custody over all other issues.

Mother filed a timely appeal.

## II. DISCUSSION

### A. Jurisdiction

Before turning to the merits, we briefly address the subject of appealability.  Mother's notice of appeal states that her appeal is from an "order after judgment" entered on August 2, 2021.  The only August 2, 2021

4

"order" in the record is the trial court's final statement of decision. Father argues that the statement of decision is not appealable because the trial court signed and filed a formal order on August 12, 2021.

"The general rule is that a statement or memorandum of decision is not appealable. [Citations.] The rule's practical justification is that courts typically embody their final rulings not in statements of decision but in orders or judgments. Reviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits." (*Alan v. America Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) Here, the statement of decision was signed and filed and constituted the court's final decision on the merits of the custody issues. It included an "order" for legal and physical custody and stated that "[t]he Court intends the custody Orders in this Final Statement of Decision to be final custody orders . . . ." A final custody order is appealable as an order after final judgment. (Code Civ. Proc., § 904.1, subd. (a)(2); *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377–1378.)

"But a statement of decision is not treated as appealable when a formal order or judgment does follow, as in this case." (*Alan v. America Honda Motor Co., Inc., supra*, 40 Cal.4th at p. 901.) Although the trial court treated its statement of decision as a final custody order, the statement of decision was followed by a "findings and order after hearing," filed on August 12, 2021, that reaffirmed the court's August 2 custody orders and included additional orders regarding visitation and related issues. We accord the right of appeal in doubtful cases, such as this one, " ' "when such can be accomplished without doing violence to applicable rules." ' " (*Ibid.*)

5

Moreover, even assuming the August 12 order is the appealable order, we liberally construe the notice of appeal as a notice of appeal from the August 12 order in the absence of prejudice. (Cal. Rules of Court, rule 8.100(a)(2) [notice of appeal must be liberally construed]; *Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1307 [" '[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where respondent could not possibly have been misled or prejudiced' "]; see, e.g., *Conservatorship of Starr* (1989) 215 Cal.App.3d 1390, 1393–1394 [faulty notice of appeal from minute order treated as appeal from subsequent formal order].) Mother's notice of appeal makes it clear that she is appealing from the trial court's denial of her move-away request and the custody orders. Father has not shown that he was misled or prejudiced by the notice of appeal. We therefore proceed to the merits.

## B. Mother's Request to Relocate

Mother raises several issues on appeal. She first contends that the trial court erred by failing to apply the rebuttable presumption of section 3044 to Father, whom she claims recently perpetrated domestic violence against his girlfriend and the parties' eldest child. Second, she asserts that the trial court erred as a matter of law by ignoring her status as the children's primary caretaker prior to her move to Hawaii, because the children's interest in the continuity and stability of established custody arrangements is an important factor in determining a move-away motion. Third, she argues that the trial court applied the wrong legal standard in denying her move-away request because it failed to "assume the move." Finally, she contends that two of the trial court's "key" factual findings were not supported by substantial evidence. We conclude that Mother has not met

6

her burden of showing reversible error.  (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [appellant bears the burden of showing that the error was prejudicial].)

### 1. *Legal Authority for Move-Away Orders and Standard of Review*

Where, as here, parents share joint custody and one of the parents seeks to move away and take the child, the court makes a de novo custody decision based on the best interests of the child under all the circumstances.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31–32 (*Burgess*).)  A " 'de novo' determination—in effect, a 'reexamination' of the basic custody arrangement—makes sense" in the joint custody situation because one parent's move will necessarily disrupt the status quo and require the court to modify the existing custody arrangement.[2]  (*In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 142 (*Whealon*).)

In evaluating a move-away case, "the trial court has wide discretion to choose a parenting plan that is in the best interest of the child." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 363.)  Factors relevant to this

---

[2] In contrast, if the parent moving away has sole physical custody of the child, he or she has the presumptive right to relocate with the child, and the opposing noncustodial parent has the burden of showing that a change in custody is in the child's best interests.  (*Burgess, supra*, 13 Cal.4th at pp. 32, 37.)  Although Mother had sole physical and legal custody of the children for several years, the trial court granted the parties joint legal and physical custody at the conclusion of the December 2020 trial regarding Father's request to rebut the section 3044 presumption, and before the March 2021 trial on Mother's move-away request.  The parties agree that the trial court correctly reviewed custody de novo.  We therefore proceed as if the trial court was required to determine custody de novo.  (*Sabey v. City of Pomona* (2013) 215 Cal.App.4th 489, 496, fn. 1 [accepting parties' assumption that attorney gave substantive advice that impacted the City Council's decision "as an accurate reflection of what transpired."].)

determination include the child's relationship with both parents, the relationship between the parents and their willingness to put the interests of the child above their individual interests, and the child's age, community ties, and health and educational needs. (*Burgess, supra*, 13 Cal.4th at p. 39; *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1101.)

The standard of appellate review of custody orders is the deferential abuse of discretion test. (*Burgess, supra*, 13 Cal.4th at p. 32.) The test is "whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*Ibid.*)

### 2. *Application of Section 3044*

Section 3044 creates a rebuttable presumption against awarding custody of a child to a perpetrator of domestic violence. The presumption arises "[u]pon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, or against the child or the child's siblings," or against a person with whom the party has a dating relationship. (§ 3044, subd. (a).) If the presumption applies, "[t]he minor child's best interests must remain at the forefront of the family court's considerations on custody in determining whether the section 3044 presumption has been rebutted." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1056.)

The court heard testimony in connection with Father's request to rebut the section 3044 presumption in December 2020. In its statement of decision, the trial court found that "[b]oth parties' testimony about dated domestic violence allegations have little probative value regarding the best interest of the minors as of the trial date." The court noted that many of the domestic violence allegations predated Mother's 2016 domestic violence restraining order petition, and it described an incident that occurred two years prior to

8

trial where Father allegedly broke his girlfriend's umbrella as "not very probative here." The court further found that Mother's insistence that Father was harming the minors "lack[ed] credibility" when the evidence, including the reports of minors' counsel and Dr. Street, "show otherwise." Although the court did not make express findings that the presumption under section 3044 applied or that Father committed domestic violence in the previous five years, the court found that Father had rebutted the section 3044 presumption and "ha[d] taken significant steps to address his issues." Those steps included completing parenting courses and an anger management class.

Mother argued in her opening brief that the trial court did not apply the section 3044 presumption when it received "new and more recent information" at the December 2020 trial that Father destroyed his girlfriend's umbrella in one incident and her glasses in another, and that he had used his son " 'as a human rag to wipe up a spill.' " However, Mother's counsel withdrew this argument at oral argument, conceding that the trial court did explicitly consider all three incidents. We simply note that withdrawal of this contention was appropriate, given that the trial court expressly found that Father had rebutted the presumption, and Mother points to no portion of the record which shows that the trial court did not consider those three incidents in making its findings under section 3044. Mother does not challenge the trial court's conclusion that Father rebutted the presumption. She therefore fails to show reversible error.[3] (See *St. Julian v. Financial*

---

[3] Mother argues that the trial court abused its discretion when it "blamed" her for Father "going to a school function in violation of the restraining order." We decline to consider this contention as she cites no portion of the record in support of this argument, nor does she cite to any legal authority. Accordingly, we deem this claim to be forfeited. (*Young v. California Fish & Game Comm'n* (2018) 24 Cal. App. 5th 1178, 1191

*Indem. Co.* (1969) 273 Cal.App.2d 185, 195 ["a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made"].)

### 3. *The Trial Court Properly Considered the Children's Interest in Continuity and Stability.*

In considering the minors' interest in stability and continuity, the court found that the parties shared custody of the children until July 2016, which is when the court granted Mother temporary sole legal and physical custody of the children and Father limited visitation. Mother remained the children's primary caretaker until August 2020, when she moved to Hawaii and "voluntarily" left the children in Father's care. This was several months before the move-away trial and approximately a year before the court issued its final statement of decision. From that point on, Father had de facto sole physical custody. The court concluded that "[w]hile the years Petitioner had temporary sole custody would favor a relocation to maintain continuity and stability of that relationship and support the move, that changed as of August 2020. The current custodial arrangement as of the time of trial weighs against an order for relocation."

Relying on *Whealon, supra*, 53 Cal.App.4th 132, Mother argues that the trial court erred when it "overemphasized" the parents' custody arrangement after Mother moved to Hawaii, because in considering the children's need for continuity and stability in established custody arrangements, the court was required to look at the "great majority of time leading up to" Mother's move.

[reviewing court may disregard contentions unsupported by citation to the record].)

10

By failing to do so, she contends, the trial court improperly ignored that she was the children's primary caretaker prior to her move to Hawaii.

In *Whealon*, the mother had primary physical custody of her and the father's son when she sought to relocate to Michigan. (*Whealon, supra*, 53 Cal.App.4th at pp. 137–138, 142.) While her relocation request was pending, the mother took the son to New York in violation of the parents' restraining order prohibiting them from taking the son out of California. (*Ibid.*) The father sought and obtained an emergency order granting him an immediate change of custody based on the mother's violation of the restraining order. (*Ibid.*) The hearing occurred a week later, and the court granted the mother's request to relocate with the son. (*Ibid.*)

On the father's appeal, the issue before the reviewing court was whether, under *Burgess, supra*, 13 Cal.4th 25, the father was the non-custodial parent. (*Whealon, supra*, 53 Cal.App.4th at pp. 141–142.) The *Burgess* court held that the custodial parent has "the presumptive right . . . to change the residence of the minor children" because "the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining ongoing custody arrangements." (*Burgess*, at pp. 32–34.) "[T]he burden is on the noncustodial parent seeking to change the custody arrangement to show that a different arrangement is warranted under the new circumstances of the move." (*Whealon*, at p. 136.) In *Whealon*, the father argued that he was the custodial parent going into the move away, and thus the one-week period where he had temporary custody conferred on him the advantage of "the custodial status quo." (*Id.* at p. 143.) The Fourth District disagreed, finding that the father's argument "ignores the substance of the custodial

11

relationship for the great majority of the time just before the move away." (*Ibid.*, italics omitted.) "The one-week interregnum in which [the father] had custody pursuant to a temporary ex parte order is so self-evidently short that it cannot realistically be described as the custodial arrangement prior to the move." (*Ibid.*)

Contrary to Mother's assertion, *Whealon* does not stand for the proposition that courts, in considering a child's interest in continuity and stability, must consider only "the great majority of time" prior to the parent's actual relocation or favor the parent who acted as primary caretaker the longest, even if the custodial status quo has since changed. Rather, the *Whealon* court found that the father's week-long temporary custody prior to the move-away decision was insufficient to alter the custodial status quo, and it made this finding to determine whether the mother had the presumptive right under *Burgess* to relocate with the child as the custodial parent. (*Whealon, supra*, 53 Cal.App.4th at p. 143.) In making this determination, the court considered the "substance" of the custodial relationship prior to the *child*'s move-away. (*Id.* at pp. 138, 143.) This makes sense because the *Burgess* court's presumption in favor of stability and continuity in the child's primary custodial relationship is based on the likely impact the disruption of the custodial status quo will have on the children's well-being should the court deny the custodial parent's request to relocate with the children. (*Burgess, supra*, 13 Cal.4th at pp. 32–33.) To require courts to place a certain amount of "emphasis" on the custody arrangement that existed prior to a parent's relocation, as Mother urges us to do, would, in many cases where the parent relocates before the move-away decision, discount the child's current interests in continuity and stability.

12

*Whealon* is also distinguishable because there is no question in this case that the *Burgess* presumption does not apply to require the trial court to presume that Mother has the right to relocate with the children as the custodial parent. Instead, as previously mentioned, Mother proceeds as if the presumption does not apply, as she agrees that the trial court correctly reviewed custody de novo. (See *Sabey v. City of Pomona, supra*, 215 Cal.App.4th at p. 496, fn. 1.) The question then is whether the trial court abused its discretion in finding that the "[t]he current custodial arrangement at the time of trial weighs against an order for relocation." (See *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 654 [the weight to be accorded to the relevant factors " 'must be left to the court's sound discretion' "].) We conclude it did not.

In assessing prejudice to the children's welfare resulting from relocation, the trial court properly considered "the nature of the child[ren]'s existing contact with both parents—including de facto as well as de jure custody arrangements—and the child[ren]'s age, community ties, and health and educational needs." (*Burgess, supra*, 13 Cal.4th at p. 39; see also *Burchard v. Garay* (1986) 42 Cal.3d 531, 536 ["in view of the child's interest in stable custodial and emotional ties, custody lawfully acquired and maintained for a significant period will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change is in the child's best interest"].) Mother does not dispute that there is substantial evidence supporting the trial court's findings that Father maintained de facto sole physical custody of the children for a significant period prior to the move-away trial, that the oldest child was more bonded with Father than Mother and had done well under Father's care, as reflected by the fact that "his encopresis had improved and [was] no longer an issue[,]"

13

and that the children had "lived in the Bay Area their entire lives." The court weighed these facts in favor of joint custody, implicitly finding little continuity or stability in the children's lives that would favor their relocation to Hawaii with Mother. Under the circumstances, the trial court reasonably concluded that a joint custody arrangement with the children living with Father during the school year "advanced the 'best interest' of the [children]." (*Burgess*, at p. 32.) Mother therefore fails to show that the trial court erred in placing greater emphasis on the existing custody arrangements than on her time as primary caretaker.

### 4. *The Trial Court Assumed the Move*

Citing *Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, Mother next argues that the trial court applied the wrong legal standard because it failed to assume the move as required. The court in *Mark T. v. Jamie Z.* held that where the parties share joint physical custody of a child and one party seeks to relocate, the proper legal standard requires the court to determine what custody arrangement would be in the best interests of the child, *assuming that the relocating parent actually moves*. (*Id.* at pp. 1119–1120.)

In *Mark T. v. Jamie Z.*, the mother requested authorization to relocate to Minnesota with the parties' child. (*Mark T. v. Jamie Z., supra*, 194 Cal.App.4th at pp. 1121–1122.) The trial court adopted the recommendations of an evaluating psychologist and denied the request. The psychologist recommended that the mother remain the primary caretaker of the child with the father gradually increasing his time with the child, an arrangement that assumed the mother would not be moving because it maintained the custodial status quo. (*Id.* at pp. 1122, 1128.) Additionally, in denying the mother's request to relocate, the trial court stated that " '[t]here is no certainty of outcome if the move away is granted,' " that the mother "did not testify that

14

she would leave [the child] in San Diego and move back to Minnesota if the move away was denied," and that the mother "had effectively conceded that she would not move to Minnesota if her move away request was denied." (*Id.* at pp. 1123, 1128.)

On appeal, the Fourth District held that "[i]n making its custody determination, *the court must proceed on the assumption that the parent who is making the request will relocate his or her own residence*, regardless of whether the court grants or denies the request." (*Mark T. v. Jamie Z., supra*, 194 Cal.App.4th at pp. 1124–1127.) The appellate court concluded that the trial court erred by failing to take the mother's relocation as a given, because it determined the child's best interests "based on the assumption that the court could cause [the mother] to remain in San Diego merely by denying her request to relocate [the child's] residence." (*Id.* at pp. 1127–1128.) The court also found that the trial court abused its discretion in adopting the recommendations of the psychologist because the psychologist also "failed to address the pertinent question with respect to [the mother's] proposed relocation." (*Id.* at p. 1128.)

Here, Mother makes the conclusory assertion that the court failed to assume the move based on the following language in the statement of decision: "The Court finds that Petitioner's request to relocate is not made in bad faith. The request to relocate was prompted by Petitioner's desire to live with her husband whose employment has relocated him to Hawaii. The distance of the requested move would make frequent and continuous contact with both parents impracticable and weighs against granting Petitioner's request." She acknowledges that the court expressly assumed the move later in its statement of decision, but she contends that this created ambiguity as

15

to whether the trial court assumed the move and that this ambiguity requires reversal. We disagree that reversal is required here.

This is not a case like *Mark T. v. Jamie Z.* where it was clear from the record that the trial court failed to determine whether it was in the child's best interests to relocate with the mother and instead sought to maintain the status quo and/or coerce the mother to abandon her plans to relocate. (*Mark T. v. Jamie Z., supra*, 194 Cal.App.4th at p. 1128; see also *Jacob A. v. C.H.* (2011) 196 Cal.App.4th 1591, 1601 ["Faced with an admittedly difficult decision, the trial court skirted the question entirely and issued an order purporting to maintain the status quo"].) To the contrary, after discussing in detail the facts relevant to whether it was in the children's best interests to relocate with Mother—including the strength of the children's bond with each parent and their interest in continuity and stability—the court stated, "Assuming Petitioner relocates to Hawaii (or remains there as she has already moved), it is in the minors' best interest to live with Respondent in the Bay Area and to visit with Respondent in Hawaii." The court was clear that the "dominating" factor in this case was that the " 'children would effectively be cut off from their father should they relocate to Hawaii' " based on evidence that Mother attempted to minimize the children's relationship with Father. The court also cited its findings that the children have lived with Father for the past year, and that "removing [the son] from [Father's] regular care would not be in his best interest." The court's reliance on those factors in denying Mother's relocation request is consistent with it assuming the move. (See *Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 907 ["It is certainly true that one of the key factors the court should address as grounds for modifying custody is the custodial parent's deliberate efforts to impair the children's frequent and continuing contacts with the noncustodial

16

parent"]; *Burchard v. Garay, supra*, 42 Cal.3d at p. 540 ["A custody determination must be based upon a true assessment of the emotional bonds between parent and child"].)

Mother does not dispute that the trial court properly relied on several factors in determining that it was not in the children's best interest to relocate with Mother. As far as we can tell, given the lack of meaningful legal analysis in her brief, her argument that the trial court applied the wrong legal standard is based on its evaluation of two other factors—whether Mother was moving in bad faith and the distance of the move. However, a finding that a parent is moving in bad (or good) faith does not mean that the court failed to assume the move; rather, it is one factor the court may consider in determining whether it is in the best interests of the child to relocate. (*Mark T. v. Jamie Z., supra*, 194 Cal.App.4th at p. 1131; see *In re Marriage of Campos* (2003) 108 Cal.App.4th 839, 844 [parent opposing a "move away" order has the right to present evidence on the issue of whether the parent relocating is doing so in bad faith].) Moreover, the court determined the bad faith issue in Mother's favor, so any error was harmless. Mother also does not present any cogent argument showing that the court's conclusion regarding the distance of the move, if error, resulted in a miscarriage of justice.[4] (See *Hoffman Street, LLC v. City of West Hollywood*

---

[4] Mother contended at oral argument that the trial court erred by weighing the distance of the move against granting her relocation request. The impracticability of the move, she argued, would be equal if the court was assuming the move, and thus the court cannot punish Mother by factoring the distance of the move against her. Even if the court erred by improperly considering the distance of the move, Mother has the burden of showing the error was prejudicial.

The cases Mother relies on in arguing that reversal is required are inapposite. Those cases involve inconsistent findings of fact or "hopelessly

17

(2009) 179 Cal.App.4th 754, 772–773 ["An appellant bears the burden to show not only that the trial court erred, but also that the error was prejudicial in that it resulted in a miscarriage of justice"].) We therefore turn to Mother's remaining arguments.

### 5. *Mother's Other Contentions Do Not Establish Reversible Error.*

Mother argues that the trial court's conclusion that she "voluntarily" left to go to Hawaii is not supported by substantial evidence, as the court's use of the word "voluntarily" "ignores the terrible decision" she had to make between moving to Hawaii to live with her husband—who had to relocate for work—or staying with her children in California. However, the court acknowledged Mother's predicament when determining whether her request to relocate was made in bad faith, an issue the trial court determined in her favor. The trial court's decision to deny her request to relocate the children was properly based on the best interests of the children. (See *In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 612 ["If Patrick's needs were the most important consideration, Cheri did have a 'duty' to stay in San Mateo, as opposed to moving to Klamath Falls, where those needs would not be so well served"].) Thus, the trial court's statement that Mother's move was voluntary does not constitute prejudicial error.

---

ambiguous" verdicts. In contrast, Mother is arguing that the trial court applied the wrong legal standard. The trial court's application of the wrong legal standard is generally subject to harmless error review. (See *Pacific Gas & Electric Co. v. Workers' Comp. Appeals Bd.* (2004) 114 Cal.App.4th 1174, 1183–1184 [applying harmless error review to determine whether reversal was required where trial court relied on both valid and invalid factors in making its decision]; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436 [before reversing a class certification order as based on erroneous legal assumptions, "we must examine the trial court's reasons for denying class certification"].)

Mother also argues that the trial court erred when it concluded that she did not provide a more stable home. Her argument is based on language in the statement of decision that the court "does not accept [Dr. Street's] finding that Petitioner provides a more stable home." According to Mother, the only evidence pertaining to the stability of the parties' respective homes shows that Father and his girlfriend argue daily in front of the children while Mother and her husband do not, and therefore the evidence does not support the trial court's conclusion that Mother does not provide a more stable home. In response, Father argues that the trial court's conclusion on the stability factor is "mooted" by the court's other findings. Father has the better argument.

"Reversal is justified 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078–1079.) Thus, "if there is a finding of fact that is dispositive and necessarily controls the judgment, the presence or absence of findings on other issues is inconsequential." (*Alpine Ins. Co. v. Planchon* (1999) 72 Cal.App.4th 1316, 1320; see *Chapman v. Sky L'Onda Mut. Water Co.* (1945) 69 Cal.App.2d 667, 680–681 [if a judgment is supported by unchallenged findings, it is not ground for reversal that the other findings are unsupported by evidence].)

The trial court found that Dr. Street's "principal basis" for concluding that Mother provides a more stable household is that the children reported they were exposed to conflict between Father and his girlfriend, and there was disparity in Father's household rules regarding the son's screen time. The court acknowledged that there was "some evidence" of conflict between

19

Father and his girlfriend, but it concluded that the issues regarding conflict in Father's home and his household rules were "far outweighed" by Mother's "efforts to cut off the minors' relationship with Respondent and the other factors weighing against the move." As previously mentioned, those other factors included the son's strong bond with Father and Father's de facto sole physical custody of the children for several months prior to the move-away trial. The trial court found that Dr. Street did not give "sufficient consideration" to factors other than the relative conflict in the parties' households. There is no basis to conclude that the trial court's acceptance of Dr. Street's findings on that factor would have resulted in a more favorable outcome for Mother, in light of the court's express finding that the conflict in Father's home and the disparity in his household rules were "far outweighed" by other factors.

Except as previously discussed, Mother's arguments on appeal ignore the trial court's dispositive findings on those other factors, and she does not contend that the trial court abused its discretion in weighing the factors. Thus, she fails to establish reversible error. (See *Alpine Ins. Co. v. Planchon, supra*, 72 Cal.App.4th at p. 1320.)

Finally, Mother argues that even if the trial court's individual errors do not constitute reversible error, they do so when viewed cumulatively. She cites *In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116 in support of her position. However, the circumstances of that case were significantly different from the circumstances of this case. In *Seagondollar*, the trial court granted the mother's request to move out of state with her children and awarded her primary custody of the children. (*Id.* at p. 1119.) The appellate court reversed the trial court order, concluding that there was cumulative error resulting in the father not receiving a fair trial: "Virtually from start to

20

finish, the trial court handling this matter failed to follow or evenly apply the rules and procedures governing family law matters and, by failing to do so, denied [the father] the opportunity to be meaningfully heard." (*Id.* at pp. 1120, 1127.) In *Seagondollar*, unlike here, the request for a move-away order was raised without adequate notice. Thus, in ruling on the request, the court used an expert report that was generated without the father knowing it would relate to a move-away dispute. (*Id.* at pp. 1127–1128.) In comparison, Mother has not raised any of the procedural errors found in *Seagondollar*, and she does not cite any evidence showing that she did not have adequate notice of the custodial determinations in this case. Thus, *Seagondollar* is inapposite, and Mother has not established cumulative reversible error.

### III.  CONCLUSION

The order is affirmed. Father to recover his costs on appeal.[5]

---

[5] Father requests that we award him $7,500 for the attorney fees and costs he incurred in defending against this appeal. As the prevailing party on appeal, Father may file a motion for attorney fees on appeal pursuant to California Rules of Court, rule 3.1702(c). (See also *Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 924 ["trial courts retain discretion to award attorney fees incurred on appeal to the eventual prevailing party"].)

21

SWOPE, J.*

WE CONCUR:

HUMES, P. J.

BANKE, J.

A167410N

---

* Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.